927 So.2d 479 (2006)
STATE of Louisiana
v.
Rockell GREGORY.
No. 05-KA-628.
Court of Appeal of Louisiana, Fifth Circuit.
March 28, 2006.
*480 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Andrea F. Long, Walter G. Amstutz, Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
Bruce G. Whittaker, Louisiana Appellate Project, New Orleans, Louisiana, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., MARION F. EDWARDS, and CLARENCE E. McMANUS.
EDWARD A. DUFRESNE, JR., Chief Judge.
On January 7, 2004, the Jefferson Parish District Attorney filed a bill of information charging defendant, Rockell Gregory, with armed robbery in violation of LSA-R.S. 14:64.[1] Defendant pled not guilty on January 9, 2004, and thereafter filed various pre-trial motions. After some hearings, the trial court denied defendant's motion to suppress statements and motion to suppress evidence.
The matter proceeded to trial before a twelve person jury on September 22 and 23, 2004. After considering the evidence presented, the jury found defendant guilty as charged. Defendant then filed a motion for new trial that was denied. On February 23, 2005, the trial court sentenced defendant to imprisonment at hard labor for ten years without benefit of parole, probation, or suspension of sentence. Defendant now appeals.

FACTS
On September 25, 2003, at approximately 2:05 a.m., Florence Lally, an employee at Dot's Diner in Jefferson Parish, was in the back of the restaurant when she heard the doorbell ring. She went to the front and saw a black female, later identified as defendant, standing there. Defendant ordered some food, and Ms. Lally turned around and began preparing the order. Although Ms. Lally did not hear the door open again, a man with a black .38 revolver suddenly came over the counter and told her to "hit the floor."
The man demanded to know where the money was, and Ms. Lally responded that it was in the back of the restaurant. The man then asked Ms. Lally who was back there, and she told him that her manager was. After the perpetrator confirmed with Ms. Lally that the manager was alone and unarmed, he took her to the back of the restaurant and told her and the manager, Ronald Farmer, to "hit the floor." Both she and Mr. Farmer complied, and the gunman told them at least three times, "don't look at me or I'll pop you." Ms. Lally and Mr. Farmer did not see the perpetrator's face because he was wearing a black scarf, but Ms. Lally observed that he was wearing red, white, and blue tennis shoes. The gunman shoved the cash[2] into his pocket and took Mr. Farmer's fanny pack, keys, and cell phone before leaving. When the perpetrator left, Ms. Lally went to the front of the store to telephone the police.
*481 When Ms. Lally returned to the front, she saw that defendant was still standing at the counter. Ms. Lally asked defendant why she did not leave since she had the opportunity to do so, and defendant responded that she was scared. According to Ms. Lally, defendant waited for her to cook another order, and defendant was still there when the police arrived. When Ms. Lally finished cooking the food, defendant told her she did not have any money to pay for it because her ride had just left her, so Ms. Lally gave defendant the food anyway.
Deputy Harry Carmouche of the Jefferson Parish Sheriff's Office arrived at the scene in response to the call. Deputy Carmouche interviewed defendant who stated that an armed robbery had occurred, and that she was pregnant and in a hurry to leave. Defendant indicated that her name was "Rockell Lander," her address was 7319 Mistletoe Street, her date of birth was March 22, 1981, and her phone number was XXX-XXX-XXXX. Deputy Carmouche wrote down her information and told her she could leave.
Subsequently, Detective Jeffrey Rodrigue of the Jefferson Parish Sheriff's Office tried to interview defendant, but was unable to contact her because she had given false personal information. In connection with the investigation, Detective Rodrigue interviewed Valencia Price and Joy Gregory, defendant's sister. While speaking with police, Joy Gregory identified Terrell Dorsey as defendant's boyfriend and the father of defendant's child. Joy Gregory told police that Dorsey committed the armed robbery at Dot's Diner and that she heard him bragging about it. Further, defendant told her that she and Dorsey had a lot of money. She also told police that she believed that defendant and Dorsey spent the proceeds from the robbery on the purchase of a car.[3]
As of result of these interviews, Detective Rodrigue developed defendant as a suspect in the armed robbery. He compiled a photographic lineup and showed it to Ms. Lally, who identified defendant as the person in Dot's Diner at the time of the robbery. Based upon his investigation, Detective Rodrigue placed defendant under arrest and transported her to the detective bureau for questioning. After being advised of her rights and waiving them, defendant gave two taped statements.
In her first statement, dated October 23, 2003, at 10:45 p.m., defendant said that a girl dropped her off at Dot's Diner so she could get something to eat. She claimed that she was present during the robbery, but did not know anything about it. Defendant explained that the robber was wearing a white t-shirt and black jeans, and that he had a black bandana around his face. She said she could not see his face, but had a feeling that it was one of her ex-boyfriends, either Andre Lemon or his brother, Terrance. She said she gave the police an incorrect name and address because she did not want to get involved. When asked if there was anything else she wanted to add to her statement, she responded affirmatively, but said that she did not want to say it on the tape.
After defendant gave the first statement, the detective stopped the tape recorder at defendant's request so she could provide him with additional information. When the tape recorder was off, defendant admitted that her boyfriend, Terrell Dorsey, was the one who committed the robbery.[4] *482 She admitted that she knew that Dorsey was going to commit the robbery prior to the crime, and that she remained behind to provide the police with false information in order to conceal Dorsey's identity. Defendant explained that she later met up with Dorsey, that Dorsey had approximately $3,500.00, and that she spent some of the money with Dorsey. Defendant then said she wanted to record what she had said, so the detective offered her the opportunity to do so.
In her second taped statement, dated October 23, 2003, at 11:27 p.m., defendant admitted that Terrell Dorsey committed the robbery and that she previously lied because she loved him and wanted to protect him. Defendant claimed that Dorsey, who was the father of her child, took her to Dot's Diner to get something to eat on the night of the robbery. According to defendant, when they arrived at the restaurant, Dorsey told her that he was going to rob the place. She thought Dorsey was "clownin", even though she knew he had a gun on him. Defendant said that as she was waiting for her food, Dorsey came in behind her, told her to turn her head, and then robbed the place. She noted that he had a scarf on his face. After the robbery, she stayed behind and gave the police false information because she was afraid for her life.
On October 24, 2003, the police executed a search warrant at defendant's residence. As a result of the search, the police recovered ammunition and a pair of red, white, and blue Pony tennis shoes, size 11.

ASSIGNMENT OF ERROR NUMBER ONE
In her first assigned error, defendant argues that the trial court erred by allowing the state to introduce her inculpatory taped statements because they were the product of improper coercion or inducement.
We first note that defendant has waived any right to raise issues on appeal concerning the admissibility of the challenged statements. Defendant objected to the admissibility of her statements by written motion to suppress, and she also objected to the trial judge's denial of that motion following a hearing. However, at trial, defendant stated she had no objection to the introduction of the statements.
In State v. Onezime, 01-1018 (La.App. 5 Cir. 2/26/02), 811 So.2d 1033, 1043, writ denied, XXXX-XXXX (La.3/21/03), 840 So.2d 535, this court stated, "where a defendant initially files a pre-trial motion objecting to the introduction of certain evidence, if at trial he specifically agrees to the introduction, he has waived his prior objection and loses the right to present the issue on appeal." Despite defendant's waiver of the right to present the issue, this court in Onezime considered the merits of defendant's claim in light of the constitutional issues raised. Likewise, even though we find that defendant waived any right to present this issue on appeal, we will briefly address the merits of defendant's claim.
On appeal, defendant claims that her taped statements were not voluntarily given but rather were the product of police coercion or inducement. She contends that the detective coerced her into giving the statements by telling her that she would not go to jail and further by not disagreeing with her when she told him she was under the impression that she would not go to jail. Defendant specifically points to the following exchange which *483 occurred toward the end of her first taped statement:
DET. J. RODRIGUE: Have you been treated fairly here tonight?
ROCKELL GREGORY: Based off what you told me, yes I have.
DET. J. RODRIGUE: Okay have I promised you anything in return for you (sic) statement and, or have we coerced you in any which way to give us a statement?
ROCKELL GREGORY: You didn't promise me anything.
DET. J. RODRIGUE: Okay.
ROCKELL GREGORY: But you told me I wasn't going to jail.
DET. J. RODRIGUE: Okay I did, I told you, you was (sic) under investigation for armed robbery. Is that correct?
ROCKELL GREGORY: Yes you did.
In order for an inculpatory statement to be admissible, the state must prove beyond a reasonable doubt that defendant was advised of his or her Miranda rights and the statement was made freely and voluntarily. LSA-C.Cr.P. art. 703 D; LSA-R.S. 15:451; Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); State v. Quest, 00-205 (La.App. 5 Cir. 10/18/00), 772 So.2d 772, 780, writ denied, 00-3137 (La.11/2/01), 800 So.2d 866. A statement obtained by direct or implied promises, or by the exertion of improper influence must be considered involuntary, and thus, inadmissible. State v. McLelland, 03-498 (La.App. 5 Cir. 10/15/03), 860 So.2d 31, 35, writ denied, 03-3372 (La.3/26/04), 871 So.2d 347.
The determination of voluntariness is made on a case-by-case basis and rests on the totality of the circumstances. The trial judge's determination as to the admissibility of the statement is entitled to great weight and will not be overturned unless unsupported by the evidence. State v. Quest, 772 So.2d at 780, 782. In determining whether the trial court's ruling on a motion to suppress is correct, the appellate court is not limited to the evidence adduced at the hearing on the motion, but may also consider pertinent evidence presented at the trial. State v. McLelland, 860 So.2d at 35.
At the suppression hearing, Detective Rodrigue testified that prior to taking defendant's statements, he filled out a rights of arrestee or suspect form and went over that form with defendant. He explained that defendant signed the form, waived her rights, and gave him two taped statements and one oral statement. Detective Rodrigue maintained that he did not threaten, force, or coerce defendant into giving those statements.[5]
At trial, Detective Rodrigue again testified about the circumstances surrounding defendant's statements. He stated that he went over a waiver of rights form with defendant, and that she signed the form acknowledging that she understood her rights and wished to waive them. Detective Rodrigue maintained that he did not threaten or promise defendant anything in exchange for her statements. He further testified that he asked her several times in the statements whether she was threatened or coerced, and she replied that she was not.
At trial, defense counsel questioned Detective Rodrigue during cross-examination about defendant's claim that he told her she would not go to jail. When questioned at trial whether he told defendant *484 that she would not go to jail, Detective Rodrigue testified as follows:
No, sir, I did not. When I filled out the rights form with her she was under arrest for armed robbery based off of other statements obtained from other individuals with this case. Now, what's being said about you might not go to jail or whatnot may be based off of depending on the total outcome of this investigation, but she was under arrest and it was very clear that she was under arrest when we were at her house and she was well aware that she was under arrest for armed robbery.
Upon further cross-examination, the detective acknowledged that he did not deny defendant's statement about no jail time; however, he maintained throughout his testimony that he did not promise defendant anything, and that she was well aware that she was under arrest for armed robbery.
In addition to Detective Rodrigue's testimony, defendant, in her statements, acknowledged that she was advised of her rights and was freely speaking to the officers. At the beginning of defendant's first statement, she stated that she signed a waiver of rights form, that she understood her rights, and that she was freely speaking to the detective. At the end of the statement, although defendant referenced a comment to the effect that she would not go to jail, she acknowledged that the detective did not force her to give the statement, that he did not promise her anything, and that she had been treated fairly. At the beginning of defendant's second statement, the officer reiterated her rights, and defendant acknowledged that she signed the waiver form and that she was freely speaking to the officer.
Based on the foregoing discussion, we find that defendant's statements were freely and voluntarily given, and that the trial judge did not err in admitting those statements. Accordingly, the arguments raised by defendant in this assigned error are without merit.

ASSIGNMENT OF ERROR NUMBER TWO
Defendant has also requested that we review the record for errors patent in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). We have conducted such a review and have found no errors patent in this case.
Accordingly, for the reasons set forth herein, we affirm defendant's conviction and sentence.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Co-defendant, Terrell Dorsey, was also charged with armed robbery in the same bill of information.
[2] Mr. Farmer testified that he had approximately $3,500.00 which he was counting at the time the perpetrator came in the back with Ms. Lally.
[3] At trial, Joy Gregory testified that she lied in the statement that she gave to police because she was scared. She claimed that the police told her that she would go to jail if she did not tell them that defendant and Dorsey committed the robbery.
[4] Dorsey was arrested for the offense on October 15, 2003, in New Orleans. At the time of his arrest, the police recovered a black and white bandana, a black .38 Special firearm, and six live rounds of ammunition.
[5] There was no evidence to the contrary for the trial judge to consider before denying the motion to suppress because defendant did not testify or present any evidence at the suppression hearing.