955 So.2d 742 (2007)
STATE of Louisiana
v.
Charles ALLEN.
No. 06-KA-778.
Court of Appeal of Louisiana, Fifth Circuit.
April 24, 2007.
Rehearing Denied May 25, 2007.
*746 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Anne Wallis, Donald Rowan, Assistant District Attorneys, Louisiana, for Plaintiff/Appellee.
Bruce G. Whittaker, Louisiana Appellate Project, New Orleans, Louisiana, for Defendant/Appellant.
Charles Allen, Defendant/Appellant (In Proper Person), Angola, Louisiana.
Panel composed of Judges WALTER J. ROTHSCHILD, FREDERICKA HOMBERG WICKER, and GREG G. GUIDRY.
WALTER J. ROTHSCHILD, Judge.
Defendant, Charles Allen, was indicted by a grand jury on November 20, 2003 and charged with second degree murder in violation of LSA-R.S. 14:30.1. He pled not guilty and filed several pre-trial motions, including a motion to suppress his confession which was denied after a hearing conducted during trial. After a two-day trial, a jury found him guilty as charged by a vote of eleven to one. Defendant was sentenced to life imprisonment without the benefit of parole, probation, or suspension of sentence.
In a brief filed by defense counsel, defendant appeals on the basis that it was error to deny the motion to suppress the confessions and he also assigned as error all errors patent. In a supplemental brief filed by defendant pro se, defendant assigns 28 errors by the trial court. For the reasons stated herein, we affirm defendant's conviction and sentence.
FACTS
At approximately 11:00 p.m. on September 24, 2003, police responded to a 911 call at 913 11th St. When they arrived, they found the victim, Jairo Pinzon, lying inside the residence near the front door with gunshot wounds. The victim was transported to Charity Hospital where he later died. He had suffered seven gunshot wounds to his body.
During the course of the investigation, Detective Richard Russ learned that the defendant was an associate of the victim, that the two had been business partners at one time, and that the two were no longer talking. Detective Russ, along with Detective Eric Becnel, spoke to the defendant on September 29, 2003. The defendant stated *747 he had worked with the victim on and off since late 1996 or early 1997 as a kitchen installer but had started his own company approximately a year and a half earlier. He stated he last saw the victim one month prior to the murder at which time the two argued over a business matter. The defendant then proceeded to give Detective Russ information about the victim's drug use, sexual relationships, and financial situation. The defendant also confirmed his earlier statement to the police that he owned a few guns, including a .45 caliber and 9mm.
After the defendant's first statement to the police, the police received the autopsy report which revealed the victim was shot with both a .45 caliber and a 9 mm gun. Remembering the defendant stated he owned both types of guns, the police went to the defendant's house in Madisonville to see if he would voluntarily relinquish his guns for ballistic testing. The defendant agreed and subsequent ballistic tests positively identified the defendant's guns as the murder weapons.
An arrest warrant for the defendant was obtained and he was arrested as he left the victim's funeral. Upon his arrest, the defendant gave a statement in which he admitted killing the victim. He stated he feared for his life and believed the victim would kill him if he did not kill the victim first. He explained he rented a car, drove to the victim's home at a time he knew the victim would not be home, entered the home through the back door, climbed into the attic, waited for the victim to come home, and shot the victim with both guns as the victim walked under the attic opening. The defendant corroborated his confession during his testimony at trial.
DISCUSSION
Defendant first argues on appeal that the trial court erred in refusing to suppress his confession because his two requests for counsel were not honored by the police.[1] He maintains he first requested counsel during his transport from St. Charles Parish, where he was arrested, to Jefferson Parish. He asserts his second request for counsel was made after the pre-interview and before the taped statement. The State responds that defendant's requests were not unequivocal invocations of his right to counsel. The State further contends the evidence shows defendant's confession was voluntary.
Before an inculpatory statement made during a custodial interrogation may be introduced into evidence, the State must prove beyond a reasonable doubt that the defendant was first advised of his Miranda rights, that he voluntarily and intelligently waived his Miranda rights, and that the statement was made freely and voluntarily and not under the influence of fear, intimidation, menaces, threats, inducements or promises. LSA-R.S. 15:451; State v. Franklin, 03-287 (La. App. 5 Cir. 9/16/03), 858 So.2d 68, 70, writ denied, 03-3062 (La.3/12/04), 869 So.2d 817.
In Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court held that the Fifth Amendment gives a suspect subject to custodial interrogation the right to consult with an attorney during questioning. State v. Payne, 01-3196 *748 (La.12/4/02), 833 So.2d 927, 934; Miranda v. Arizona, 384 U.S. at 469-473, 86 S.Ct. at 1625-1627. The police are required to explain this right to the suspect before the custodial interrogation, "initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way," begins. State v. Payne, supra at 934, citing Rhode Island v. Innis, 446 U.S. 291, 298, 100 S.Ct. 1682, 1688, 64 L.Ed.2d 297 (1980), quoting Miranda v. Arizona, 384 U.S. at 444, 86 S.Ct. at 1619. The safeguards regarding the Miranda right to counsel are triggered by both a custodial setting and official interrogation. State v. Payne, supra at 934.
After a knowing and voluntary waiver of the Miranda rights, law enforcement officers may continue questioning a suspect unless or until he clearly requests an attorney. Davis v. United States, 512 U.S. 452, 461, 114 S.Ct. 2350, 2356, 129 L.Ed.2d 362 (1994). Whether the accused actually invoked his right to counsel is an objective inquiry. State v. Payne, 833 So.2d at 935, citing Davis v. United States, 512 U.S. at 458-459, 114 S.Ct. at 2355. In order to invoke his right to counsel, the suspect must articulate his desire to have counsel present with sufficient clarity to enable a reasonable police officer, in the circumstances, to understand his statement to be a request for an attorney. Id. See also, State v. Leger, 05-0011 (La.7/10/06), 936 So.2d 108, 135. The invocation of the right to counsel during the custodial interrogation "requires, at minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." State v. Payne, 833 So.2d at 935, quoting Davis v. United States, 512 U.S. at 459, 114 S.Ct. at 2355.
Once a suspect has asked to have an attorney present, he is not subject to any further interrogation by the authorities until counsel has been made available to him, unless the suspect initiates further communication, exchanges or conversations with the police. State v. Payne, 833 So.2d at 935, citing Edwards v. Arizona, 451 U.S. 477, 484-485, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981). A cessation of questioning is not required, if the suspect makes a reference to an attorney that is ambiguous or equivocal, which causes a reasonable police officer, in light of the circumstances, to understand only that the suspect might be invoking the right to counsel. State v. Payne, supra at 935, citing Davis v. United States, 512 U.S. at 458, 114 S.Ct. at 2355. (emphasis in original).
In analyzing whether there has been a direct, clear, unequivocal, and unambiguous request for counsel, courts must give a broad, rather than narrow, interpretation to the suspect's request. State v. Payne, 833 So.2d at 936, citing Michigan v. Jackson, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986). The admissibility of a confession or statement is a determination for the trial court and the trial court's ruling will not be overturned unless the preponderance of the evidence clearly favors suppression. State v. Gant, 06-232 (La.App. 5 Cir. 9/26/06), 942 So.2d 1099, 1123.[2]
During the suppression hearing, Detective Eric Becnel stated he advised the defendant of his Miranda rights at the time he arrested him in St. Charles Parish and again when he placed the defendant *749 into the car prior to transporting him to Jefferson Parish. Detective Becnel testified the defendant stated he understood his rights. Detective Becnel explained that he and the defendant held a conversation during the transport. At some point, he told the defendant his bosses would want to know, "did you do this or didn't you do this," to which the defendant replied he thought he might want to speak to an attorney. Detective Becnel told the defendant it was his constitutional right and that he would give the defendant time to decide once they arrived at the police station.
At the police station, the defendant was given cigarettes and water at his request and was given 15-20 minutes in an open area without handcuffs to decide whether he wanted an attorney. Thereafter, while Detective Becnel and the defendant were "shooting the breeze," the defendant stated he was willing to go ahead and provide a statement. The defendant was brought into an office and was interviewed by Detective Becnel, in the presence of Detective Richard Russ. During this interview, defendant confessed to killing the victim. Detective Becnel advised the defendant that he needed a taped statement at which time the defendant stated he might want to speak to an attorney about contacting the district attorney's office about working out an insanity plea or deal. The defendant stated he needed to think about it and indicated he was hungry. He was given food from McDonald's at his request, ate the food, smoked a cigarette, and then stated he was ready to give a statement. At the commencement of the taped statement, the defendant's Miranda rights were reviewed and the defendant agreed he was waiving his rights.
The defendant testified during the suppression hearing that he asked for an attorney twice during the transport to Jefferson Parish but was never given an opportunity to call an attorney. He also stated he requested an attorney before his taped statement but was told by the police that without his statement he would prosecuted for first or second degree murder as opposed to manslaughter, a statement denied by Detective Becnel.
At the conclusion of the hearing, the trial court denied the motion to suppress defendant's confession. The trial court commented that Detective Becnel testified consistently and that the court believed his testimony. The trial court further noted defendant appeared to be intelligent, understood his right to counsel, and understood that he did not have to answer questions but that he proceeded to give a statement. The trial court found the statement to be voluntary.
On appeal, the defendant does not claim that he was not advised of his Miranda rights or that he did not knowingly and voluntarily waive those rights. Instead, he claims he requested an attorney during the custodial interrogation and that his request was ignored. Based on the circumstances of this present case, we fail to find the trial court erred in denying the defendant's motion to suppress his confession.
In Davis v. United States, 512 U.S. 452, 461, 114 S.Ct. 2350, 2356, 129 L.Ed.2d 362 (1994), the defendant made a remark to law enforcement officers during an interview, after being advised of his rights, that, "[m]aybe I should talk to a lawyer." The United States Supreme Court determined that the defendant's remark was not an unambiguous or unequivocal request for counsel that required to officers to stop questioning the defendant.
Additionally, in State v. Chesson, 03-606 (La.App. 3 Cir. 10/1/03), 856 So.2d 166, 173-175, writ denied, 03-2913 (La.2/13/04), *750 867 So.2d 686, the Third Circuit upheld the trial court's denial of the defendant's motion to suppress his statement despite his statement to police officers while being transported that "he might  he felt like he should talk to an attorney." The Third Circuit concluded that "[t]he defendant's statement regarding his `thinking' that he possibly `should' speak with an attorney is not the type of unequivocal and unambiguous statement described above [in Davis]."[3]
Similar to State v. Chesson, supra, the defendant in the present case twice stated he was "thinking" he "might" want an attorney. According to Detective Becnel, who the trial court found credible, the defendant never unequivocally stated he wanted an attorney. Under Davis, the defendant's statements that he thought he might want to speak to an attorney were ambiguous and cessation of questioning was not required. Thus, the trial court did not err in denying the defendant's motion to suppress his confession.
This assignment of error is without merit.
PRO SE SUPPLEMENTAL BRIEF
On February 19, 2007, after this matter was submitted to this Court, defendant filed a pro se brief listing 28 assignments of error.
Assignments of error numbers 8, 10, 11, 14, 19, 20, 22, 23 and 25-28 of the supplemental brief relate to claims involving ineffective assistance of counsel. In these twelve assignments of error, defendant claims his trial attorney was ineffective for various reasons ranging from counsel's failure to ask certain questions of certain witnesses and his failure to present a defense to his failure to adequately investigate the case, pursue certain discovery, and timely pursue certain pre-trial motions. He also asserts his appellate counsel was ineffective for failing to raise the issue of coercion of his confession.
A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution of 1974. In assessing a claim of ineffectiveness, a two-pronged test is employed. The defendant must show that (1) his attorney's performance was deficient, and (2) the deficiency prejudiced him. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Soler, 93-1042 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, 1075, writ denied, 94-1361 (La.11/4/94), 644 So.2d 1055. The error is prejudicial if it was so serious as to deprive the defendant of a fair trial, or "a trial whose result is reliable." Strickland v. Washington, 466 U.S. at 687, 104 S.Ct. at 2064; State v. Serio, 94-131 *751 (La.App. 5 Cir. 6/30/94), 641 So.2d 604, 607, writ denied, 94-2025 (La.12/16/94), 648 So.2d 388. In order to show prejudice, the defendant must demonstrate that, but for counsel's unprofessional conduct, the outcome of the trial would have been different. Strickland v. Washington, 466 U.S. at 694, 104 S.Ct. at 2068; State v. Soler, supra at 1075.
The Sixth Amendment does not guarantee a defendant errorless counsel or counsel judged ineffective by hindsight. State v. Cambre, 05-888 (La.App. 5 Cir. 7/25/06), 939 So.2d 446, 460, citing State v. LaCaze, 99-584 (La.1/25/02), 824 So.2d 1063, 1078, cert. denied, 537 U.S. 865, 123 S.Ct. 263, 154 L.Ed.2d 110 (2002). Ineffective assistance claims are assessed on the facts of the particular case as seen from the counsel's perspective at the time. State v. Cambre, supra at 460. As such, there is a strong presumption that counsel's conduct will fall within the wide range of reasonable professional assistance. Id.
An ineffective assistance of counsel claim is most appropriately addressed through an application for post-conviction relief filed in the trial court where a full evidentiary hearing can be conducted. State v. Taylor, 04-346 (La. App. 5 Cir. 10/26/04), 887 So.2d 589, 595. When the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised by an assignment of error on appeal, it may be addressed in the interest of judicial economy. Where the record does not contain sufficient evidence to fully explore a claim of ineffective assistance of counsel, the claim should be relegated to post-conviction proceedings under LSA-C.Cr.P. arts. 924-930.8. Id., at 595.
In the present case, the appellate record is insufficient to consider all defendant's allegations of ineffective assistance of counsel. For example, in one claim, defendant asserts defense counsel was ineffective because he failed to call any witnesses. A defense counsel's decision to call or not call a witness is a matter of trial strategy and is not per se evidence of ineffective assistance. State v. Washington, 00-1312 (La.App. 5 Cir. 5/16/01), 788 So.2d 596, 607, writ denied, 01-1718 (La.5/3/02), 815 So.2d 94. This Court has held that ineffectiveness of counsel, relating to trial strategy, cannot be determined by review of the record on appeal but rather such a claim must be asserted by application for post-conviction relief where the issue can be considered through an evidentiary hearing to determine, among other things, the defense strategy and whether the defendant himself was aware of the strategy and acquiesced in it. Id., at 607; see also, State v. Cambre, 05-888 (La.App. 5 Cir. 7/25/06), 939 So.2d 446, 461.
In another claim, defendant asserts his trial counsel was ineffective for failing to request a responsive verdict of justifiable homicide. LSA-C.Cr.P. art. 814(A)(3) provides the only responsive verdicts for second degree murder are guilty, guilty of manslaughter, and not guilty. According to LSA-C.Cr.P. art. 814(A)(3), "justifiable homicide" is not a responsive verdict to second degree murder and, therefore, was properly not included in the jury charges as a possible verdict. Furthermore, justifiable homicide is a defense and not a responsive verdict. See, LSA-R.S. 14:18. Although this claim of ineffective assistance of counsel can be considered based on the appellate record, it lacks merit.
When there is sufficient evidence to consider some but not all of the allegations of ineffectiveness of counsel, this Court has declined to address any of the claims stating that the entirety of claims are more properly addressed on post-conviction relief *752 at an evidentiary hearing. See, State v. Cambre, supra; State v. Taylor, 04-346 (La.App. 5 Cir. 10/26/04), 887 So.2d 589, 595. Thus, we find that these arguments alleging ineffective assistance of counsel should be considered in their entirety by the trial court on post-conviction relief at an evidentiary hearing.
In pro se assignments 1, 3, 4, 5, 6, 15 and 15, defendant challenges the voluntariness of his confession. He claims that he was not advised of his Miranda rights, that he was not told of the charges against him, that there were irregularities in the waiver of rights form he executed, that only a portion of his statement was recorded, that the confession was coerced, and that his requests for counsel were ignored.
As stated previously herein, the State bears the burden of proving defendant was advised of his Miranda rights, that he voluntarily and intelligently waived his Miranda rights, and that the statement was made freely and voluntarily and not under the influence of fear, intimidation, menaces, threats, inducements or promises. LSA-R.S. 15:541; State v. Franklin, 03-287 (La.App. 5 Cir. 9/16/03), 858 So.2d 68, 70, writ denied, 03-3062 (La.3/12/04), 869 So.2d 817.
A statement obtained from the defendant by direct or implied promises, or by the exertion of improper influence must be considered involuntary and, therefore, inadmissible. State v. Gregory, 05-628 (La.App. 5 Cir. 3/28/06), 927 So.2d 479, 483. The determination of voluntariness of the statement is made on a case-by-case basis and rests on the totality of the circumstances. Id. A trial court's determination on the admissibility of a statement and its conclusions on the credibility and weight of the testimony relating to the voluntariness of the confession or statement are entitled to great weight and will not be overturned unless unsupported by the evidence. Id.
Defendant first argues he was not advised of his Miranda rights before his confession. To the contrary, the record shows defendant was advised of his Miranda rights several times. Detective Eric Becnel testified that when he first arrested defendant at the victim's funeral, he advised him of his Miranda rights. He stated he again advised defendant of his rights when he put him in the car for transport to Jefferson Parish. Detective Becnel further testified he advised defendant of his rights yet again prior to giving his confession.
The State introduced the rights of an arrestee or suspect form during the motion to suppress hearing. The form was signed by defendant and shows defendant was advised of his rights and that he waived his rights. The form also shows defendant was under arrest for second degree murder. Additionally, at the very beginning of his confession, the waiver of rights form was specifically referenced. Defendant was expressly asked if he had been advised of his Miranda rights and that he was waiving his rights and defendant affirmatively responded.
Defendant next claims he was unaware of the exact charges against him and asserts the waiver of rights form was incomplete when he signed it. He specifically claims the line identifying what he was arrested for was left blank. There is nothing in the record to support his claim. Defendant testified during the motion to suppress hearing and never asserted there were irregularities with the form. The waiver of rights form signed by defendant clearly states defendant was under arrest for a violation of LSA-R.S. 14:30.1, second degree murder. Additionally, at the beginning of defendant's taped confession, Detective Becnel stated the statement was *753 being taken in reference to the homicide of Jairo Pinzon, the victim.
Defendant further asserts his confession was coerced by threats of being charged with second-degree murder if he did not confess and psychological tactics aimed at cajoling him into confessing. At the motion to suppress hearing, defendant testified that the police told him that if he did not give a statement the DA would prosecute him for second degree murder, if not first degree murder. According to defendant, the police stated they did not believe it was a second degree murder case but explained he could not be charged with manslaughter without a statement. Detective Becnel testified on rebuttal that he never told defendant he thought the case warranted a manslaughter charge and denied telling defendant that if he refused to give a statement Detective Becnel would not help him get the lesser manslaughter charge.
The trial court was free to accept Detective Becnel's testimony, that no such conversation was had, as credible. Defendant was aware he was being charged with murder. Detective Becnel testified he never told defendant his charge would be lesser if he confessed. Nothing in the record indicates defendant was induced to confess by a promise of a lighter charge.[4]
Defendant also argues he was mentally coerced to confess by the officers' attempts to build a rapport with him by "shooting the breeze" and giving him food and cigarettes. This Court has stated that a confession is "coerced" if "an individual's `will was overborne' or if his confession was not `the product of a rational intellect and a free will'" whether by physical intimidation or psychological pressure. State v. Sanchez, 462 So.2d 1304, 1308-1309 (La.App. 5 Cir.1985), writ denied, 465 So.2d 733 (La.1985), quoting Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 754, 9 L.Ed.2d 770 (1963). The type of behavior defendant complains about does not fall within the parameters of coercive behavior.
Defendant further challenges the admissibility of his confession on the basis the police failed to record his entire statement. The record shows defendant gave statements to the police prior to giving a recorded confession. He claims the failure of the police to record his "entire" statement resulted in a coerced statement. Defendant did not raise this issue in the trial court. In State v. Fasola, 04-902 (La.App. 5 Cir. 3/29/05), 901 So.2d 533, 544, writ denied, 05-1069 (La.12/9/05), 916 So.2d 1055, this Court refused to address a similar issue after noting the defendant did not raise the issue in the trial court.[5] Of note, there is no requirement that a statement to the police must be recorded. State v. Thibodeaux, 98-1673 (La.9/8/99), 750 So.2d 916, 923, cert. denied, 529 U.S. 1112, 120 S.Ct. 1969, 146 L.Ed.2d 800 (2000).
Finally, defendant asserts his requests for counsel were disregarded. This issue was discussed previously herein and was found to lack merit.
These seven assignments of error are without merit.
*754 In assignments 2, 13 and 17, defendant challenges the admissibility of his first taped statement to the police wherein he admitted owning the two guns that were later identified as the murder weapons. He contends the police only learned he possessed the weapons when they first talked to him without advising him his Miranda rights despite knowing he was a suspect in the murder. Defendant maintains his arrest was illegal because it was based on information obtained in violation of his due process rights.
Prior to trial, defendant filed two motions to suppress his statement(s). The first was a generic motion seeking to suppress all confessions or inculpatory statements on the basis they were not voluntary. The second motion was more specific and sought to suppress defendant's confession on the basis his request for an attorney was disregarded. A motion to suppress hearing was held during trial after a tape of defendant's first statement, which was made before defendant was arrested, was introduced into evidence and played for the jury without objection. Evidence at the motion hearing related only to the admissibility of defendant's second statement wherein he confessed after his arrest.
After the trial court ruled defendant's confession was admissible, defense counsel attempted to challenge defendant's first statement which contained information about the guns. Defense counsel asserted the first statement was improper because defendant was not advised of his rights and was effectively under arrest at the time. There was some discussion between the parties and the trial judge that the first statement was made before defendant was a suspect and before he was in custody. Thereafter, trial resumed.
An objection made after the evidence is before the jury is too late. State v. Rivet, 01-353 (La.App. 5 Cir. 9/25/01), 798 So.2d 219, 227. In Rivet, this Court concluded defense counsel's objection to a letter introduced into evidence was untimely. Defense counsel failed to object when the letter was produced and a witness was questioned about the letter. Instead, counsel waited until after the witness' testimony was complete and after the State moved to admit the letter into evidence to lodge his objection.
Also, in State v. Johnson, 519 So.2d 212 (La.App. 5 Cir.1988), writ denied, 523 So.2d 1334 (La.1988), defendant challenged the admission of evidence pertaining to a sweatshirt that had been the subject of a pre-trial motion to suppress that was apparently not heard. This Court determined defense counsel waited too late in the trial to object to the introduction of the sweatshirt, noting that counsel failed to object at the time the sweatshirt was first shown to the jury but rather waited until after testimony referring to the sweatshirt had been placed before the jury before objecting.
In the present case, defense counsel specifically stated, "No objections," when the State sought to introduce the tape and transcript of defendant's first statement into evidence. Thereafter, the tape was played for the jury without objections. It wasn't until after the subsequent motion to suppress defendant's confession, his second statement to the police, that defense counsel alleged any impropriety in defendant's first statement. Thus, the objection to the admissibility of the first statement is untimely.
Nevertheless, we find no merit to defendant's claim. In State v. Weeks, 345 So.2d 26, 28 (La.1977), the Louisiana Supreme Court held, "Miranda warnings are not a pre-requisite to admissibility of statements taken by officers during non-custodial, *755 general, on-the-scene investigations, conducted to determine the facts and circumstances surrounding a possible crime, absent a showing that the investigation had passed the investigatory stage and has focused on the accused."
In the present case, the evidence supports a finding that the investigation had not focused on defendant at the time of his first statement and, thus, the police were not required to advise defendant of his Miranda rights. Defendant gave a taped statement five days after the murder at which time he gave information about his relationship with the victim. Detective Becnel, who took defendant's first statement, testified that at the time he took defendant's first statement the investigation had multiple angles considering the fact the victim frequented strip clubs, had strange sexual behavior, and engaged in drug use. He stated that at the time he spoke to defendant anybody could have been a suspect. Detective Russ also testified that at the time of defendant's first statement the police still had multiple avenues of investigation.
This assignment of error is without merit.
In pro se assignment of error number 7, defendant contends the police failed to investigate his claims that he was the victim of a racketeering or entrapment conspiracy involving his successful business. He alleges the failure to investigate was a result of police corruption. Defendant asserts that the failure of the police to investigate his claim somehow affected his defense.
It is unclear how defendant was prejudiced by the alleged failure to investigate his claims. Defendant never asserted someone else was the perpetrator. To the contrary, he admitted killing the victim and the physical evidence showed he owned the guns that matched the ballistics of the bullets found in the victim. Additionally, defendant testified at trial in his defense and asserted his claim that he was the victim of a racketeering conspiracy. Furthermore, whether defendant was or was not the victim of a racketeering conspiracy is not relevant to the issue of whether he was guilty of second degree murder.
In pro se assignment of error number 9, defendant challenges his examination by Dr. Post, a psychiatrist reportedly hired by the defense to examine defendant. He claims Dr. Post only determined his competency to stand trial and did not determine his state of mind at the time of the offense. It is unclear what issue defendant is raising by this assertion but it appears he is claiming Dr. Post's examination or lack thereof somehow affected his plea.[6]
The record shows defendant pled not guilty at his arraignment which was one day after he was indicted. A motion for a sanity commission was filed approximately five months later. At the sanity hearing, defense counsel stipulated that defendant was competent to stand trial but noted his expert, Dr. Post, needed additional time to determine defendant's state of mind at the time of the offense. The trial court accepted defendant's not guilty plea and set the matter for trial.
LSA-C.Cr.P. art. 561 provides in pertinent part:
The defendant may withdraw a plea of "not guilty" and enter a plea of "not guilty and not guilty by reason of insanity," *756 within ten days after arraignment. Thereafter, the court may, for good cause shown, allow such a change of plea at any time before the commencement of trial.
The record shows defendant proceeded to trial without any assertion of an insanity defense. Any issue regarding the failure of defense counsel to have properly asserted a sanity defense is a matter which may be considered through post-conviction relief proceedings under La.C.Cr.P. art. 924, et seq. [See, State v. Hart, 96-697 (La.3/7/97), 691 So.2d 651, 661, where the Louisiana Supreme Court relegated defendant's claim that his counsel was ineffective for failing to raise an insanity defense to post conviction relief.] Of note, defense counsel advised the trial court prior to trial that it was abandoning an insanity plea after their expert could not say with medical certainty that defendant did not know the difference between right and wrong at the time of the offense. Defendant has failed to show that any further testing or examination by his own mental expert would have resulted in any evidence of insanity at the time of the offense. See, State v. Colvin, 452 So.2d 1214, 1219 (La. App. 2 Cir.1984), writ denied, 457 So.2d 1199 (La.1984).
By pro se assignment number 12, defendant contends the prosecutor asked leading questions of Detectives Russ and Becnel to steer their testimony towards facts that made it seem defendant's statements were voluntary.
A review of the transcript shows there were no objections during the testimony of Detectives Russ and Becnel, with the exception of the one objection to the admissibility of the confession that was the subject of the motion to suppress. LSA-C.Cr.P. art. 841(A) provides, in part, that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." The purpose behind the contemporaneous objection rule under LSA-C.Cr.P. art. 841(A) is to put the trial judge on notice of an alleged irregularity so that he may cure the problem and to prevent the defendant from gambling for a favorable verdict and then resorting to appeal on errors that might easily have been corrected by an objection. When a defendant fails to lodge a contemporaneous objection to a witness' testimony, the defendant waives his right to assert the error on appeal. State v. Singleton, 05-634 (La.App. 5 Cir. 2/14/06), 923 So.2d 803, 809, writ denied, 06-1208 (La.11/17/06), 942 So.2d 532.
There were no objections to the prosecutor's alleged leading questions or to the testimony of Detectives Russ and Becnel. Therefore, defendant has waived his right to assert this issue on appeal. Of note, defendant is claiming the leading questions caused the suppression of facts surrounding his confession. Defendant was given the opportunity and did fully cross-examine the detectives about the manner of his confession. As such, we find that defendant did not suffer any prejudice by the manner in which the detectives were questioned at trial.
By pro se assignment of error 18, defendant argues the trial court erred in allowing autopsy photographs of the victim into evidence. He asserts the photographs were gruesome and were used to inflame the jury. He contends the post mortem photo of the victim's face was not necessary and the photographs of the victim after attempts to resuscitate him were prejudicial because they showed wounds from the tubes and incisions that were not inflicted by defendant.
During the testimony of Dr. Susan Garcia, the forensic pathologist who performed the autopsy, the State sought to use nine *757 autopsy photographs. Defense counsel objected on the basis the photos were inflammatory and some were gruesome. The State responded the photos were important to show the different angles of the wounds and what Dr. Garcia discovered in the autopsy. The trial judge overruled the objection and stated the photos were not bloody or gruesome. He concluded the photos would not excite or disturb the jury and that they had a legitimate purpose.
Post mortem photographs of murder victims are admissible to prove corpus delicti, to corroborate other evidence establishing cause of death, location, placement and number of wounds, as well as to provide identification of the victim. State v. Condley, 04-1349 (La.App. 5 Cir. 5/31/05), 904 So.2d 881, 892-893, writ denied, 05-1760 (La.2/10/06), 924 So.2d 163 (citations omitted). The mere fact a photograph is gruesome does not, in and of itself, render it inadmissible. State v. Jones, 99-798 (La.App. 5 Cir. 11/10/99), 748 So.2d 1176, 1179, writ denied, 00-0306 (La.12/8/00), 775 So.2d 1076. Photographic evidence is properly admitted unless it is so gruesome that it overwhelms the jurors' reason and leads them to convict the defendant without sufficient evidence, i.e., when the prejudicial effect of the photographs substantially outweighs their probative value. Id., at 1179.
The nine autopsy photographs cannot be said to be so gruesome as to overwhelm the jurors' reason and lead them to convict defendant without sufficient other evidence. Most of the photographs show cleaned up bullet wounds without considerable blood. Dr. Garcia referred to the photographs during her testimony to explain which wounds were lethal, debilitating, defensive, and where the projectiles were recovered. [See, State v. Jones, supra at 1180, where this Court found the autopsy photographs were not prejudicial even though one photo made it difficult to distinguish the injuries inflicted by the defendant from what was done during the autopsy. This Court noted that although some of the photographs were disturbing, none were particularly gruesome.]
By pro se assignment of error 21, defendant argues the prosecutor impermissibly referred to his failure to produce evidence or call witness to support his claim of self-defense during the prosecutor's cross-examination of defendant. Defendant's specific reference to page 280 in the record where this allegedly occurred does not reveal any questions or statements that could be construed to be a comment on defendant's failure to present a defense.
It is only those direct and indirect references to a defendant's failure to testify that are impermissible. LSA-C.Cr.P. art. 770(3); State v. Pendelton, 00-1211 (La.App. 5 Cir. 3/14/01), 783 So.2d 459, 464, writ denied, 01-1242 (La.1/25/02), 807 So.2d 243. Defendant took the stand and testified in his own defense. Therefore, no comment could possibly be construed to reference his failure to testify. Of note, the prosecutor is permitted to comment on the lack of evidence.[7] LSA-C.Cr.P. art. 774; State v. Jackson, 04-293 (La.App. 5 Cir. 7/27/04), 880 So.2d 69, 73, writ denied, 05-0232 (La.5/6/05), 901 So.2d 1094.
By pro se assignment number 24, defendant contends that the prosecutor made prejudicial statements during his closing argument, but he failed to brief this assignment of error. Any assignment *758 of error that is not briefed is considered abandoned on appeal. See, Uniform Rules-Courts of Appeal Rule 2-12.4, and State v. McGinnis, 04-1286 (La.App. 5 Cir. 10/6/05), 917 So.2d 471, 486, writ denied, 05-2469 (La.4/28/06), 927 So.2d 283.
This assignment of error is therefore deemed abandoned.
Defendant also requests an error patent review. This Court routinely reviews the record for errors patent in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990) regardless of whether the defendant makes such a request. The following matter was discovered:
The sentencing transcript does not show that the defendant was advised of the two-year prescriptive period for filing an application for post-conviction relief in accordance with LSA-C.Cr.P. art. 930.8. Although the commitment reflects that notice of the prescriptive period was given, when there is a discrepancy between the minutes and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732 (La.1983). Accordingly, the trial court is hereby instructed to inform the defendant of the two-year prescriptive period by sending written notice to the defendant within ten days after the rendition of the appellate opinion and to file written proof in the record that defendant received said notice. State v. Pittman, 04-705 (La.App. 5 Cir. 12/28/04), 892 So.2d 641, 645-646, writ denied, 05-0228 (La.5/6/05), 901 So.2d 1094.
DECREE
Accordingly, for the reasons assigned herein, the defendant's conviction and sentence are affirmed. The case is remanded to the trial court with instructions provided herein.
AFFIRMED; CASE REMANDED WITH INSTRUCTIONS.
NOTES
[1] Defendant gave two statements to the police. The first statement was made on September 29, 2003 while the police were investigating the murder and prior to defendant's arrest. The second statement was made after defendant's arrest on October 3, 2003. This argument relates to the second statement, although defendant argues in his pro se brief that the first statement should have been suppressed as well.
[2] A writ, # 2006-K-2529, was filed with the Louisiana Supreme Court on October 20, 2006 but no ruling has been issued to date.
[3] See also, State v. Payne, 01-3196 (La.12/4/02), 833 So.2d 927, where the Louisiana Supreme Court found the defendant's statement of "may I call a lawyer  can I call a lawyer," was insufficient to invoke her right to counsel so as to require a suppression of her statement; State v. Cooper, 36,830 (La. App. 2 Cir. 3/5/03), 839 So.2d 995, 998-999, writ denied, 03-0999 (La.10/10/03), 855 So.2d 330, where the Second Circuit concluded the trial court did not err in denying the defendant's motion to suppress his confession despite the fact the defendant's father had made a comment when the defendant was advised of his rights prior to questioning that they might want an attorney later; and, State v. Thomas, 30,490 (La.App. 2 Cir. 4/8/98), 711 So.2d 808, writ denied, 99-0331 (La.7/2/99), 747 So.2d 8, where the Second Circuit determined the defendant's question of, "[b]ut do I  do I need a lawyer," upon being advised of his rights during questioning was not a request for an attorney. In Thomas, the court noted that the defendant's "vacillating references to counsel fail[ed] to meet the objective requirement pronounced in Davis." Id. at 812.
[4] Of note, this Court has held that any discussions of penalties and different grades of homicides are superficial when not done in a threatening manner and do not render a confession involuntary. See, State v. Franklin, 03-287 (La.App. 5 Cir. 9/16/03), 858 So.2d 68, 73, writ denied, 03-3062 (La.3/12/04), 869 So.2d 817.
[5] In Fasola, the defendant claimed his Due Process rights were violated when the officers failed to record his entire interrogation because it deprived him of the ability to present evidence of the circumstances that led to his confession.
[6] The record does not show Dr. Post's report was ever introduced into evidence during any trial court proceeding.
[7] During his cross-examination of defendant, the prosecutor asked if defendant had any of the business records to show he was telling the truth about the existence or non-existence of business issues between defendant and the victim.