945 So.2d 798 (2006)
STATE of Louisiana
v.
Wendell V. GRAY.
No. 06-KA-298.
Court of Appeal of Louisiana, Fifth Circuit.
October 31, 2006.
Paul D. Connick, Jr., District Attorney, Terry Boudreaux, Andrea F. LongAppellate Counsel, Assistant District Attorneys, Gretna, Louisiana, for Appellee, State of Louisiana.
*799 Prentice L. White, Louisiana Appellate Project, Baton Rouge, Louisiana, for Appellant, Wendell V. Gray.
Wendell V. Gray, pro se.
Panel composed of Judges MARION F. EDWARDS, SUSAN M. CHEHARDY, and GREG G. GUIDRY.
SUSAN M. CHEHARDY, Judge.
On April 29, 2003, the Jefferson Parish District Attorney filed a bill of information charging defendant, Wendell V. Gray, with possession with intent to distribute cocaine in violation of La. R.S. 40:967 A. Defendant was arraigned on April 30, 2003 and pled not guilty. On July 9, 2003, defendant's motions to suppress evidence and statement were heard and denied.
On August 11, 2003, defendant's trial began. The following day, the twelve-member jury found defendant guilty as charged. On October 20, 2003, the trial court sentenced defendant to imprisonment at hard labor for 15 years, with two years without benefit of parole, probation, or suspension of sentence.[1]
On July 6, 2004, the State filed a bill of information alleging that defendant was a third felony offender. On August 18, 2004, defendant denied the allegations of the multiple bill. On January 5, 2005, however, defendant stipulated to the allegations of the multiple bill. On that same date, the trial court vacated defendant's sentence on the underlying felony conviction and sentenced defendant to imprisonment at hard labor for thirty years without benefit of probation or suspension of sentence, pursuant to La. R.S. 15:529.1.
Facts
At trial, Deputy A.J. Thibodeaux of the Jefferson Parish Sheriff's Office ("JPSO") testified that, on April 9, 2003, at approximately 11:00 p.m., he and his partner, Deputy Rene Lacombe, were patrolling near Senate and Delegate Streets in Avondale, Louisiana when they observed a white Mercury Grand Marquis coming toward them in the left lane traveling backwards. The officers stopped the vehicle to investigate.
After the vehicle stopped, Deputy Lacombe went to the driver's side of the vehicle to ask the driver for his driver's license, registration, and insurance information. At that same time, Deputy Thibodeaux approached the passenger's side of the vehicle and scanned the inside of the vehicle through the partially open window with his flashlight looking for weapons or contraband. Deputy Thibodeaux immediately observed a clear plastic bag, which he believed contained contraband, in a cup-holder on the center console of the floorboard.
Deputy Thibodeaux then told his partner that he believed they had discovered a "967" and told Deputy Lacombe to ask the driver, later identified as defendant, to step out of the vehicle. Deputy Lacombe testified that, after he escorted defendant to the rear of the vehicle and instructed defendant to place his hands on the trunk, Lacombe patted defendant down for weapons, *800 handcuffed defendant, and advised him of his constitutional rights.
After defendant exited, Deputy Thibodeaux went around to the driver's side of the vehicle, reached in, and retrieved the clear plastic bag containing, what appeared to him to be, crack cocaine. Deputy Lacombe testified that, once Deputy Thibodeaux retrieved the clear plastic bag from the vehicle, defendant stated to Deputy Lacombe, "[t]hose are mine, one's for me and the rest are for me to sell."
Deputy Lacombe further testified that defendant did not try to explain that his car was not running properly. He added that no bystanders came by the scene that night.
Andrea Travis, who was stipulated to be an expert in the field of the testing and analysis of controlled dangerous substances, testified at trial that the substance in question tested positive for cocaine. Her report reflects that the evidence consisted of "one clear plastic bag containing four off white rock objects and one clear plastic bag inside another clear plastic bag containing nine off white rock objects one being individually wrapped in clear plastic." The report further shows that the material had a gross weight of 5.79 grams.
JPSO Sergeant Joe Williams, who was stipulated to be an expert in the field of the use, packaging, and sale of controlled dangerous substances, testified at trial that, in his opinion, the thirteen rocks of crack cocaine recovered in this case were not solely for personal use but were intended to be sold. Sergeant Williams based his opinion on the fact that thirteen rocks is a large amount of crack cocaine, which would take an average user about two weeks to use. Further, a number of the rocks were separately packaged in small, clear plastic bags, which would indicate that they were ready for sale. In Sergeant Williams' estimation, the street value of the seized contraband was approximately $20.00 to $40.00 per rock.
After the State rested its case, defendant called Ryan Marshall as a witness at trial. Marshall testified that defendant was his ex-brother-in-law, and that they were good friends. He explained that a couple of weeks prior to April 9, 2003, defendant purchased a white car for $400.00. Because the car was not running properly, defendant had it towed to Marshall's house so Marshall could repair it. Marshall stated that the car was in his possession for a week or two prior to April 9, 2003 and that defendant had not been around the car during that time.
According to Marshall, on April 9, 2003, he picked defendant and defendant's children up at his sister's house and brought them to his house where defendant cut several individuals' hair. At approximately 6:30 or 7:00 p.m., after defendant finished the haircuts, Marshall and defendant worked on defendant's car. Defendant subsequently took the car out for a test drive while Marshall ran some errands. Marshall testified that, at approximately 10:30 or 11:00 p.m., as he was returning home, he saw defendant in his car at Senate and Delegate Streets and noticed that the car "jerked" and the rear lights came on.
Marshall explained that a police car then approached defendant's car, and that two officers exited the car. Marshall testified that one officer was looking into the car with his flashlight. Marshall asked the other officer, later identified as Deputy Lacombe, if they were going to take defendant to jail. Marshall claimed that Deputy Lacombe told him to mind his own business and to call the police station if he needed any information. Marshall left and, by the time he returned, the police had taken defendant away.
*801 William Williams, Jr. testified that he first met defendant on March 29, 2003, when defendant tried out for his semi-professional football team. He noted that defendant was a good football player and a leader on the team, and that he participated in one tryout and one practice workout before his arrest. He testified that defendant came to practice with his cousin, and that he never saw defendant come to practice driving an automobile. After hearing the testimony and considering the evidence, the jury found defendant guilty as charged.
On appeal, defendant alleges one counseled assignment of error and one pro se assignment of error. In his counseled assignment of error, defendant argues that the district court committed reversible error in denying his Motion to Suppress the Evidence and his Statement because the record clearly shows that defendant was arrested for a motor vehicle violation, but was later charged with possession of cocaine after the two officers allegedly found drugs on his console following a ten-minute search of his vehicle. In his pro se assignment of error, defendant argues that the appellate counsel rendered ineffective assistance in his original brief to this court because the brief clearly shows that the district court committed reversible error in denying defendant's motion to suppress the evidence and his statements.
In his counseled assignment of error, defendant argues that the trial court erred in denying his motion to suppress the evidence and statements because the officers did not witness him involved in any illegal activity. He asserts that the drugs were not found immediately, but only after a ten-minute search of his vehicle. He alleges that the officers were dishonest when they testified that no one approached them when they were questioning him, and he points out that his alleged incriminating statement was not placed in the police report or tape recorded.
The State responds that the trial court did not err in denying the motion to suppress the evidence and statements since the initial stop was lawful after defendant committed a traffic violation and the drugs were lawfully seized after the officer observed them in plain view. The State further responds that, because defendant's arrest was lawful, defendant's voluntary and spontaneous statements made during the stop were admissible.
The Fourth Amendment of the United States Constitution and Article I, Section 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. However, law enforcement officers are authorized by La.C.Cr.P. art. 215.1, as well as state and federal jurisprudence, to conduct investigatory stops, which allow officers to stop and interrogate a person who is reasonably suspected of criminal activity. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Gresham, 97-1158 (La.App. 5 Cir. 4/15/98), 712 So.2d 946, 951, writ denied, 98-2259 (La.1/15/99), 736 So.2d 200.
"Reasonable suspicion" to stop is something less than probable cause and is determined under the facts and circumstances of each case by whether the officer had sufficient facts within his knowledge to justify an infringement on the individual's right to be free from governmental interference. State v. Sanders, 97-892 (La.App. 5 Cir. 3/25/98), 717 So.2d 234, 240, writ denied, 98-1163 (La.9/25/98), 724 So.2d 774. The violation of a traffic regulation provides reasonable suspicion to stop a vehicle. State v. Jones, 01-177 (La.App. 5 Cir. 10/17/01), 800 So.2d 958, 962. Evidence derived from an unreasonable stop will be excluded from trial. *802 State v. Benjamin, 97-3065 (La.12/1/98), 722 So.2d 988, 989. In order for the plain view exception to the warrant requirement to apply, there must be prior justification for police intrusion into a protected area and it must be immediately apparent, without close inspection, that the item is contraband. Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); State v. Gentras, 98-1095 (La.App. 5 Cir. 3/30/99), 733 So.2d 113, 116, writ denied, 99-1302 (La.10/15/99), 748 So.2d 464.
In a hearing on a motion to suppress, the State bears the burden of proof in establishing the admissibility of evidence seized without a warrant. State v. Rodriguez, 99-914 (La.App. 5 Cir. 1/25/00), 761 So.2d 14, 17, writ denied, 00-599 (La.4/7/00), 759 So.2d 765. The trial court is afforded great discretion when ruling on a motion to suppress and its ruling will not be disturbed absent an abuse of that discretion. In determining whether the ruling on a motion to suppress was correct, the court is not limited to the evidence adduced at the hearing on the motion, but may consider all pertinent evidence given at the trial of the case. State v. Washington, 00-1542 (La.App. 5 Cir. 2/14/01), 782 So.2d 639, 645, writ denied, 01-0940 (La.2/8/02), 807 So.2d 859.
In addition to the evidence adduced at trial, defendant testified at the suppression hearing that, on April 9, 2003, Ryan Marshall, his ex-brother-in-law, drove him to Marshall's father's house on Congress Street in Avondale to cut three people's hair. Defendant explained that Marshall had to pick him up since defendant's car was not working. Defendant had actually towed the car to Marshall's house for repairs. At approximately 9:30 p.m., defendant asked Marshall whether the repairs on his car, a white Grand Marquis, were complete. Marshall indicated to defendant that he had repaired some, but not all of the problems.
Defendant wanted to test-drive the car so he drove around the block. He testified that, when he got to the corner of Senate and Delegate Streets, the car stopped going forward. Because defendant smelled gas fumes coming from the hood, he stopped, put the car in park, then put the car in drive to see if the car would go forward. Defendant explained that the car, however, started going backwards. As he was backing up, he noticed some headlights coming toward him. Defendant testified that he pulled over and got out of his car just as the taller deputy approached him and inquired about his car trouble.
Defendant told the officer about his car's mechanical problems then the officer asked defendant for the vehicle information and his driver's license. After defendant gave the officer his state ID, the officer left and another officer came and handcuffed him. Defendant claimed the officer did not tell him he was being arrested for cocaine possession or distribution. He also denied making any statements to the officer about cocaine.
Defendant testified that the officer put him in the back of the police car while both officers searched his car for approximately ten minutes. Defendant further testified that neither officer told him that he had violated any traffic laws. According to defendant, after the search was complete, Deputy Thibodeaux gave defendant a citation, which he signed, and the deputy said, "[w]ell, whose (sic) got all the drugs around here. What are you doing in this area? You've got to be buying drugs." Defendant responded negatively then the officers took him away in the police car.
Defendant admitted that he had two felony convictions: possession of cocaine, for which he was sentenced to two years probation, *803 and distribution of crack cocaine, for which he was sentenced to fifteen years at hard labor. Defendant indicated that he was on parole for distribution of crack cocaine at the time of the instant offense. Defendant testified that he had never used drugs in his life, and that he did not see cocaine in his car when he took it for a test drive.
After reviewing the entire record, including all pertinent evidence adduced at the trial of this case, we find no abuse of the trial court's great discretion in its ruling on defendant's motions to suppress and, thus, will not disturb its ruling. Regarding the initial investigatory stop, we find that the record clearly reflects that defendant was stopped for a traffic violation. Both Deputies Thibodeaux and Lacombe testified that they stopped the vehicle because it was traveling backwards in the left lane. Deputy Lacombe explained that traveling backwards in the left lane of traffic was illegal since defendant should have been traveling in the right lane. In addition, defendant admitted at the suppression hearing that he was traveling backwards in the left lane when the officers stopped him, and that he was supposed to be in the right lane. Clearly, the officers had reasonable suspicion to stop defendant's vehicle.
Further, we find that the record reflects that Deputy Thibodeaux had prior justification for his intrusion into the protected area of defendant's vehicle. Deputy Thibodeaux testified that he shined his flashlight through the partially-opened passenger-side window of the vehicle for safety reasons.[2] Further, under the plain view exception to the warrant requirement, it must be immediately apparent, without close inspection, that the item in view is contraband. Deputy Thibodeaux testified that he saw the plastic bag containing the "rocks," which he immediately believed were contraband, when he shined his flashlight through the window. Because the traffic stop gave the officer justification for being next to defendant's vehicle, and it was immediately apparent to the officer that the clear plastic bag that he saw contained contraband, the officer had the right to seize the contraband based on the plain view exception to the warrant requirement.
In State v. Jones, 01-177 (La.App. 5 Cir. 10/17/01), 800 So.2d 958, 960-963, deputies observed a vehicle disregard a stop sign. When they attempted to affect a traffic stop, the vehicle fled. The deputies observed the front seat passenger throwing small round objects out of the vehicle's window. When the deputies were able to stop and approach the vehicle, they observed defendant stuff an object into the air conditioning vent on the dashboard. When defendant moved his hand away, one of the deputies saw a clear plastic bag. Once the occupants were removed from the vehicle, the deputy retrieved the plastic bag, which contained crack cocaine. This Court concluded that the officers conducted a lawful traffic stop and observed crack cocaine in plain view and, therefore, the trial court properly denied defendant's motion to suppress the evidence. Id. at 963.
*804 On appeal, defendant also argues that the officers' testimony was not credible. First, defendant contends that the officers only found the drugs after searching his vehicle for ten minutes, despite Deputy Thibodeaux's testimony at the suppression hearing that he found the drugs immediately after shining his light through the window. Second, defendant alleges that the officers were dishonest when they testified that no one approached them when they were questioning him. Third, defendant asserts that Deputy Lacombe was not credible when he testified that defendant made incriminating statements regarding the drugs, because the statements were not placed in a police report or tape recorded. The credibility of witnesses at the suppression hearing is within the discretion of the trier of fact, who may accept, in whole or in part, the testimony of any witness, and such credibility determinations will not be reweighed on appeal. State v. Enclade, 03-353 (La.App. 5 Cir. 9/16/03), 858 So.2d 8, 13. In light of the foregoing, as in State v. Jones, supra, we find that the trial court did not err in denying defendant's motions to suppress evidence and statement.
In his pro se assignment of error, defendant argues that his appellate counsel rendered ineffective assistance in his original brief to this court because the brief clearly shows that the district court committed reversible error in denying defendant's motion to suppress the evidence and his statements. Defendant specifically contends that appellate counsel failed to argue in the original brief that he did not give the officers consent to search his vehicle and, therefore, all evidence allegedly confiscated should not have been admitted at trial.
We find that the warrantless search and subsequent seizure in this case was not based on consent, but on the plain view exception to the warrant requirement. Here, the officers observed defendant committing a traffic violation, which gave them the right to stop him. After the lawful stop, the officer saw contraband in plain view and had the right to seize it. Thus, defendant's refusal to consent to the officers' search of his vehicle has no bearing on the lawfulness of this seizure. Moreover, we find no failure to assist on his appellate counsel's part in regard to this issue.
Finally, we have reviewed the record for errors patent, according to La.C.Cr.P. art. 920 and found one error that requires correction. We note that the trial transcript reflects that the trial judge informed defendant that "applications for post-conviction relief must be filed within two years after your sentence becomes final." We therefore remand the case to the district court to inform defendant of the complete provisions of La.C.Cr.P. Art. 930.8 by sending appropriate written notice to defendant within ten days of the rendition of the Court's opinion and to file written proof of receipt of such notice in the record. State v. Stelly, 98-578 (La.App. 5 Cir. 12/16/98), 725 So.2d 562, 564.
AFFIRMED; REMANDED.
NOTES
[1] On May 25, 2004, more than seven months after his sentencing, defendant filed a motion for appeal that was granted. That appeal was subsequently lodged with the Court. On December 20, 2004, the State filed a Motion to Dismiss defendant's first appeal as untimely, which this Court referred to the merits of the appeal. On April 26, 2005, this Court granted the state's motion, dismissed defendant's first appeal, and remanded the matter to allow the defendant the opportunity to seek reinstatement of his appeal rights. State of Louisiana v. Wendell V. Gray, 04-1272 (La.App. 5 Cir. 4/26/05), 902 So.2d 1060. Defendant subsequently filed an application for post-conviction relief seeking reinstatement of his appeal rights, which was granted by the trial court. This appeal follows.
[2] See State v. Curtis, 98-1283 (La.App. 5 Cir. 6/1/99), 738 So.2d 657, 661, writs denied, 99-1950 (La.12/17/99), 751 So.2d 873 and 99-2679 (La.3/31/00), 758 So.2d 810 (using a flashlight to illuminate the interior of the defendant's vehicle as a safety precaution since the passenger had not gotten out of the car did not constitute a search within the meaning of the Fourth Amendment); and State v. Young, 39,546 (La.App. 2 Cir. 3/2/05), 895 So.2d 753, 757 (an officer who peers into the interior of a vehicle during a legitimate traffic stop is not conducting a search within the meaning of the Fourth Amendment).