WALTER J. ROTHSCHILD, Judge.
 

 | ^Defendant, Demond A. Haynes, was charged with possession of cocaine with intent to distribute, a violation of LSA-R.S. 40:967 A. Defendant pled not guilty at arraignment. On March 13, 2007, the trial court heard and denied defendant’s motions to suppress statement and evidence. Following a jury trial on May 30 and 31, 2007, defendant was found guilty as charged.
 

 Defendant filed a motion for new trial on June 12, 2007 and the motion was denied that day. Defendant was then sentenced to 15 years at hard labor, the first two years to be served without benefit of parole, probation, or suspension of sentence. The State then filed a habitual offender bill of information, alleging defendant to be a second felony offender. Defendant denied the allegations in the habitual offender bill.
 

 
 *328
 
 |sOn August 20, 2007, defendant stipulated to his status as a second felony offender. The trial court vacated defendant’s original sentence and imposed a habitual offender sentence of 20 years at hard labor without benefit of probation or suspension of sentence.
 

 On June 18, 2008, the trial court granted defendant an out-of-time appeal. On March 3, 2009, appointed appellate counsel filed an Anders
 
 [1]
 
 brief containing no assignments of error but requesting a review of the record for errors patent on the face of the record. Appellate counsel also filed a motion in this Court to withdraw as counsel of record pursuant to the procedures in
 
 State v. Benjamin,
 
 573 So.2d 528, 530 (La.App. 4 Cir.1990). By order dated September 11, 2009, this Court ordered that the appellate record be returned to appellant and allowed him to file a brief in this matter within 30 days. On November 3, 2009, defendant filed a supplemental
 
 pro se
 
 brief in this Court asserting several assignments of error.
 

 FACTS
 

 At trial, Detective Elvin Módica testified he is assigned to the narcotics division of the Jefferson Parish Sheriffs Office. On July 25, 2006, he received a complaint regarding drug activity at the Shoney’s Inn on Clearview Parkway. His department had received complaints about the hotel for some time, and the use and sale of narcotics there had reportedly become more frequent and open.
 

 Detective Módica and Detective Jason Monnerjahn went to the Shoney’s Inn that night dressed in plainclothes. They walked around the premises looking for narcotics activity and potential informants. The officers encountered Rayburn Knowles, a hotel guest who said he would assist them in their investigation in |4exchange for money.
 
 [2]
 
 They accompanied Mr. Knowles to his room, number 148. Mr. Knowles’ female friend, Stacie Renz, was in the room, but she left immediately because she did not want to be involved in the investigation.
 

 Detective Módica testified that at about 8:45 p.m., Mr. Knowles used his cellular telephone to arrange a narcotics purchase. Mr. Knowles then told the officers that the person delivering the narcotics would be a black man driving a black Buick Century automobile. Detective Módica radioed that description to Sergeant (now Lieutenant) Daniel Jewell and Detective Todd Vignes, who were performing surveillance outside the hotel. At around 9:00 p.m., Jewell and Vignes notified Módica that a car fitting the description was entering the hotel’s parking lot.
 

 Mr. Knowles looked out the window and confirmed that the man he had telephoned was approaching the room. On the officers’ instructions Mr. Knowles hid in the bathroom. Detective Módica testified there was a knock at the door, and he opened it. Defendant, Demond Haynes, stood outside the doorway holding a cellular telephone in one hand and what appeared to be crack cocaine in his other hand. Detective Módica seized the cocaine, arrested defendant, handcuffed him, and advised him of his
 
 Miranda
 

 [3]
 

 rights. The officers asked defendant why he was at the hotel, and defendant told them he was there to visit a friend. They asked
 
 *329
 
 him if he planned to deliver the cocaine to this Mend, and defendant responded that he did. The officers searched defendant incident to arrest and recovered $105.00. Defendant did not possess paraphernalia for smoking crack.
 

 Detective Módica identified four large, off-white rocks wrapped individually in plastic that he seized from defendant. Detective Módica testified that he field | ¿tested the rocks at the scene, and the result was positive for cocaine.
 
 [4]
 
 The officer also weighed the rocks in their wrappings, and each one weighed about three and one-half grams, or one-eighth of an ounce.
 

 Lieutenant Daniel Jewell testified that he has been assigned to the narcotics division of the Jefferson Parish Sheriffs Office for five years. Prior to that, he was an officer with the New Orleans Police Department for four years, and worked in the Charleston police department for one year. Lieutenant Jewell testified that on July 25, 2006, he and Sergeant Vignes assisted in the narcotics investigation at the Shoney’s Inn. His department had received numerous complaints of narcotics and prostitution activities at that location.
 

 Lieutenant Jewell stated that he and Sergeant Vignes set up surveillance in the hotel’s parking lot at about 8:30 p.m. They were told to expect a man driving a Black Buick Century with shiny rims to deliver narcotics to room 148. At about 9:00 p.m., Lieutenant Jewell saw a car meeting that description enter the parking lot and park three or four parking spaces away from room 148. The car had two occupants.
 

 Lieutenant Jewell testified that he saw the driver, a black man, exit the car and go to the door of the hotel room. The door opened, and Detectives Módica and Mon-nerjahn engaged the man. Lieutenant Jewell and Sergeant Vignes secured the car and its remaining occupant, Troy Gould. They found nothing of evidentiary value in the car or on Mr. Gould’s person.
 

 The parties stipulated at trial that Lieutenant Jewell was an expert in the packaging, value, and distribution of controlled dangerous substances, particularly | ^cocaine and “crack” cocaine. The trial court accepted the stipulation. Lieutenant Jewell testified that the three things he looks for in distinguishing possession with intent to distribute narcotics from simple possession are 1) the quantity of the substance, 2) its packaging or portioning, and 3) its value.
 

 According to Lieutenant Jewell, the typical rock of crack cocaine weighs .1 or .2 grams, and costs $10.00 or $20.00. With regard to quantity, Lieutenant Jewell stated that a big user smokes, at most, eight to ten rocks of crack in a day. A street level user ordinarily buys only enough of the drug — one or two rocks — to use right away. Once he has smoked the crack he has, he looks for money to buy more. Lieutenant Jewell testified that each of the four slabs of crack seized in this case could be broken down into 15 to 30 individual rocks or doses; up to 120 rocks in total. In Jewell’s opinion, the amount of cocaine was too great for personal use. If the four slabs or “eight balls” were sold as they were, each one would bring 125 to 150 dollars. If they were broken down and
 
 *330
 
 sold in .1 to .2 gram rocks, the four slabs of crack would garner $1,200.00.
 

 Lieutenant Jewell testified that the lack of drug use paraphernalia on defendant’s person and in the car was another indication of the intent to sell the cocaine rather than use it. The officer opined that if defendant intended to use the cocaine, he would have given some indication that he intended to stay at the hotel and use it.
 

 The defense called Bernard Bonin, the manager of the Shoney’s Inn, as a witness at trial. Mr. Bonin testified that Stacie Renz had two separate stays at the hotel during 2006. She checked in on May 4, 2006, and checked out on June 2, 2006. She checked in again on July 1, 2006, and checked out on July 21, 2006. During the second stay she was in room 148. Ms. Renz’s boyfriend, Mr. Knowles, | ^signed the registration documents. Mr. Knowles checked into the hotel again on October 5, 2006, and checked out on October 6, 2006.
 

 PRO SE BRIEF
 

 By his supplemental
 
 pro se
 
 brief, defendant first argues that Detective Elvin Modica’s trial testimony regarding what informant Rayburn Knowles told him about an arranged drug deal was impermissible hearsay, since Mr. Knowles did not testify at trial and was not subject to cross-examination. Defendant contends that, as a result, his right of confrontation was violated.
 

 Detective Módica testified at trial that, in response to complaints about drug activity at the Shoney’s Inn on Clearview Parkway, he and Detective Monnerjahn went to the hotel in plainclothes. The officers encountered Mr. Knowles, a hotel guest, who agreed to work with them as a paid informant.
 

 Detective Módica testified that Mr. Knowles used his cellular telephone to arrange a narcotics purchase for the officers. Mr. Knowles told the officers that the person delivering the narcotics would be a black man driving a black Buick Century automobile. Defendant later arrived at the hotel in a car fitting Knowles’ description. Mr. Knowles confirmed that defendant was the man with whom he had arranged the drug deal. Módica testified that defendant was holding what he believed to be crack cocaine in his hand, and the officers immediately arrested him.
 

 The transcript of Detective Modica’s testimony shows — and defendant acknowledges — that he failed to contemporaneously object to the testimony at issue. In failing to make a timely objection at trial, defendant waived the issue for appellate review. See LSA-C.Cr.P. art. 841;
 
 State v. Draughn,
 
 05-1825, pp. 55-56 (La.1/17/07), 950 So.2d 583, 620-21,
 
 cert. denied,
 
 552 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007);
 
 State v. Davis,
 
 06-402, p. 17 (La.App. 5 Cir. 11/28/06), 947 So.2d 48, 58-59,
 
 writ denied,
 
 07-0003 (La.9/14/07), 963 So.2d 996.
 

 |sEven if reviewed on the merits, defendant’s complaint does not constitute reversible error. Hearsay is defined as “a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted.” LSA-C.E. art. 801 C. A law enforcement officer may not testify to the contents of an informant’s tip because such testimony violates the accused’s right to confront and cross-examine witnesses.
 
 State v. Addison,
 
 05-378, p. 12 (La.App. 5 Cir. 12/27/05), 920 So.2d 884, 892,
 
 writ denied,
 
 06-1087 (La.11/9/06), 941 So.2d 36. But under certain circumstances, the testimony of a police officer may include information provided by a third party without constituting hearsay, if it is offered to explain the police investigation and the steps leading to the defendant’s arrest.
 
 Id.; State v.
 
 
 *331
 

 Paul,
 
 05-612, p. 11 (La.App. 5 Cir. 2/14/06), 924 So.2d 345, 352. Still, the Louisiana Supreme Court has cautioned that, “the fact that an officer acted on information obtained during the investigation may not be used as an indirect method of bringing before the jury the substance of the out-of-court assertions of the defendant’s guilt that would otherwise be barred by the hearsay rule.”
 
 State v. Hebert,
 
 02-1252, p. 7 (La.4/8/03), 846 So.2d 60, 64-65.
 

 Even if such hearsay evidence is erroneously admitted at trial, confrontation errors are subject to harmless error analysis, and the guilty verdict may stand if the reviewing court finds it was surely unattributable to the error.
 
 Addison,
 
 05-378 at 13, 920 So.2d at 893. Factors to be considered include the importance of the evidence to the State’s case, whether the testimony was cumulative, the presence or absence of additional corroboration of the evidence, the extent of cross-examination permitted, and the overall strength of the State’s case.
 
 Id.
 

 We find that a portion of Detective Mo-dica’s testimony (e.g., the substance of the citizen complaints received by his department) was not hearsay, since it served to explain why he went to the Shoney’s Inn. Although some of the officer’s testimony |a(e.g., Mr. Knowles’s identification of defendant as the person with whom he had arranged the drug transaction) may constitute hearsay, we find that even if defendant was denied his right of confrontation, the error is harmless. In the end, the State’s case was based primarily on Detective Modica’s testimony that he saw defendant holding cocaine in plain view. Thus, the hearsay testimony was not central to the State’s case.
 

 This case is comparable to the facts in
 
 State v. Addison, supra.
 
 In that case, the defendant was convicted of possession with intent to distribute marijuana and possession of a firearm by a convicted felon. Agent Digiovanni, the investigating officer, testified at trial that he went to Wiegand Drive in response to information he received from a confidential informant.
 
 Addison,
 
 05-378 at 15, 920 So.2d at 894. Agent DiGiovanni further testified that he learned from the informant that an individual in a white Dodge pickup truck would be delivering marijuana to a location on Wiegand. The officer stated the informant had proven reliable in the past. On appeal, this Court found this part of the officer’s testimony was not hearsay, since it was used to explain the basis and course of the police investigation.
 
 Id.
 

 Agent DiGiovanni testified that the informant gave him a license plate number, a physical description of the driver, and the first name of the passenger of the vehicle (Larry). The officer said he learned the defendant’s address from the informant.
 
 Addison,
 
 05-378 at 15-16, 920 So.2d at 894. This Court held that some of Agent DiGiovanni’s testimony — such as the details regarding the information he received from the informant — went beyond the scope of explaining the course of the investigation. But this Court found the erroneous admission of the hearsay testimony was harmless error.
 
 Id.,
 
 05-378 at 16, 920 So.2d at 894. This Court reasoned that the State’s case against the defendant was based not on the testimony concerning the information received from the informant, but on the evidence found thereafter. This Court further found that the [ ^introduction of the informant’s statements did not contribute to the defendant’s guilty verdict.
 
 Id.,
 
 05-378 at 16, 920 So.2d at 895.
 

 We therefore find no merit in defendant’s argument.
 

 By his next two assignments of error, defendant argues the trial court erred in
 
 *332
 
 denying his motion to suppress evidence.
 
 [5]
 
 He seems to complain that the officers did not have reasonable suspicion to support an investigatory stop. He further contends the officers did not have probable cause to arrest him.
 

 The trial court held a hearing on defendant’s motion to suppress evidence on March 13, 2007. Detective David Módica testified that on the night of July 25, 2006, he went to the Shoney’s Inn, where there had reportedly been an increase in drug activity. He was accompanied by officers Daniel Jewell,
 
 [6]
 
 Jason Monnerjahn,
 
 [7]
 
 and Todd Vignes.
 
 [8]
 
 At the hotel, the officers encountered a confidential informant (Cl)
 
 [9]
 
 who offered to arrange a narcotics delivery for them. Detective Módica had never met the Cl before that night.
 

 The Cl said he would telephone a man he knew as “D” to arrange the deal, and that “D” would arrive at the hotel ten to 20 minutes later. He described “D” as a tall, slim, black man who drove a black Buick Century with large, shiny, chrome rims. Sergeant Vignes and Lieutenant Jewell set up surveillance in the hotel’s parking lot, and Detectives Módica and Monnerjahn went to room 148 with the Cl.
 

 The Cl made a telephone call. Detective Módica testified that the call was brief, and that the Cl spoke in a kind of code. The gist of the conversation was that Inthe Cl was ordering drugs from someone. About ten minutes after the Cl placed the phone call, the surveillance officers notified Detective Módica that a black Buick Century with large, shiny rims was entering the hotel’s parking lot. The car parked four spaces away from room 148. The Cl looked through the peephole in the hotel room door, and stated that he saw the man he knew as “D” approaching. The officers had the Cl hide in the bathroom.
 
 (Id.).
 

 “D,” who was defendant, Demond Haynes, knocked on the door of room 148. Detective Módica opened the door and saw defendant standing there holding a bag of crack cocaine in plain view. Detective Mó-dica immediately arrested defendant and advised him of his rights. Defendant said he understood his rights. The detective asked defendant why he was there, and defendant replied that he was visiting a friend. When asked whether he was there to deliver drugs, defendant admitted that he was. The officers performed a field test on the material defendant had, and it was positive for cocaine.
 

 The State bears the burden of proof in establishing the admissibility of evidence seized without a warrant. LSA-C.Cr.P. art. 703 D;
 
 State v. Honeycutt,
 
 08-126, p. 6 (La.App. 5 Cir. 5/27/08), 987 So.2d 250, 253. The trial judge’s decision
 
 *333
 
 to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression.
 
 Id.
 
 at 6, 987 So.2d at 253-54. In reviewing the trial court’s ruling on a motion to suppress, the appellate court may consider the evidence at the motion hearing and at trial.
 
 State v. Imbraguglio,
 
 08-64, p. 11 (La.App. 5 Cir. 5/27/08), 987 So.2d 257, 264.
 

 Defendant first asserts that the officers made an illegal investigatory stop.
 
 [10]
 
 His argument is misplaced, since the evidence clearly showed that it was defendant who |12approached the hotel room where the officers were. The encounter was not an investigatory stop as contemplated by Louisiana law.
 

 Defendant further contends that the officers did not have probable cause to arrest him. This argument lacks merit. Detective Módica testified that he saw a quantity of what he recognized to be crack cocaine in plain view in defendant’s hand. Once the officer saw the contraband, he had probable cause to arrest defendant for possession of cocaine. The “plain view” doctrine is a recognized exception to the warrant requirement.
 
 Coolidge v. New Hampshire,
 
 403 U.S. 443, 465, 91 S.Ct. 2022, 2037, 29 L.Ed.2d 564 (1971);
 
 State v. Smith,
 
 07-815 (La.App. 5 Cir. 3/11/08), 982 So.2d 821, 825,
 
 writ denied,
 
 08-0927 (La.11/14/08), 996 So.2d 1088. Police may seize evidence under the “plain view” doctrine when: 1) there is prior justification for an intrusion into the protected area, and 2) it is immediately apparent, without close inspection, that the items seized are evidence or contraband.
 
 Horton v. California,
 
 496 U.S. 128, 135-136, 110 S.Ct. 2301, 2307, 110 L.Ed.2d 112 (1990).
 

 In this case, Detective Módica was lawfully in room 148 of the hotel, since he was invited there by the Cl, who was renting the room. When Detective Módica opened the door, it was immediately apparent to him that defendant was holding crack cocaine in his hand. Detective Módi-ca testified that he did not field test the suspected contraband until after he made the arrest. But the “plain view” exception does not require a police officer to be certain that the object in plain view is contraband; it simply requires that the officer have probable cause to believe that the item in question is either evidence and/or contraband.
 
 Texas v. Brown,
 
 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983);
 
 State v. Smith,
 
 07-815 at 6, 982 So.2d at 825.
 

 These assignments have no merit.
 

 Finally, defendant contends that both his trial and appellate attorneys were ineffective. Defendant claims his trial counsel 1) failed to sufficiently show that the arresting officers did not have the reasonable suspicion necessary to make a valid
 
 Terry
 
 stop; 2) failed to require the State to carry its burden of proving the reliability of the informant; 3) failed to point out to the jury the internal contradictions in
 
 *334
 
 the State’s suppression hearing evidence; and 4) permitted the State to use inadmissible hearsay to bolster its case. Defendant complains his appellate counsel was ineffective in failing to brief any of the foregoing claims.
 

 A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution. In assessing a claim of ineffectiveness, a two-pronged test is employed. The defendant must show that 1) his attorney’s performance was deficient, and 2) the deficiency prejudiced him.
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984);
 
 State v. Allen,
 
 06-778, p. 9 (La.App. 5 Cir. 4/24/07), 955 So.2d 742, 750,
 
 writ denied,
 
 08-2432 (La.1/30/09), 999 So.2d 754. The error is prejudicial if it is so serious as to deprive the defendant of a fair trial, or “a trial whose result is reliable.”
 
 Strickland,
 
 466 U.S. at 687, 104 S.Ct. at 2064;
 
 State v. Allen,
 
 06-788 at 10, 955 So.2d at 750. In order to show prejudice, the defendant must demonstrate that, but for counsel’s unprofessional conduct, the outcome of the trial would have been different.
 
 Strickland,
 
 466 U.S. at 694, 104 S.Ct. at 2068;
 
 State v. Allen, supra.
 

 M In order to prevail, the accused must overcome a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; specifically, the defendant must overcome the presumption that, under the circumstances, the challenged action “might be considered sound trial strategy.”
 
 Strickland v. Washington,
 
 466 U.S. at 689, 104 S.Ct. at 2065. An alleged error that is within the ambit of trial strategy does not establish ineffective assistance of counsel, because “opinions may differ on the advisability of such a tactic.”
 
 State v. Singleton,
 
 05-634, p. 11, (La.App. 5 Cir. 2/14/06), 923 So.2d 803, 811,
 
 writ denied,
 
 06-1208 (La.11/17/06), 942 So.2d 532.
 

 An ineffective assistance of counsel claim is most appropriately addressed through an application for post-conviction relief filed in the trial court where a full evidentiary hearing can be conducted.
 
 State v. Cambre,
 
 05-888, pp. 25-26 (La.App. 5 Cir. 7/25/06), 939 So.2d 446, 460,
 
 writ denied,
 
 06-2121 (La.4/20/07), 954 So.2d 158. In the instant case, all of the claims defendant raises potentially involve the issue of counsel’s trial strategy. This Court has held that ineffectiveness of counsel relating to trial strategy cannot be determined by review of the record on appeal, but must be asserted on application for post-conviction relief, where an evidentiary hearing can be held to determine, among other things, defense counsel’s strategy and whether the defendant himself was aware of the strategy and agreed to it.
 
 State v. Allen,
 
 06-778 at 11, 955 So.2d at 751;
 
 State v. Cambre,
 
 05-888 at 27, 939 So.2d at 461.
 

 Since defendant’s claims regarding his appellate counsel are inextricably related to the claims he makes against his trial counsel, we find that those claims should also be relegated to post-conviction relief.
 
 [11]
 
 Further, appellate counsel filed an
 
 Anders
 
 1 isbrief certifying that she reviewed the appeal record and determined there were no non-frivolous issues she could raise on appeal, which is further discussed herein.
 

 
 *335
 

 ANDERS BRIEF
 

 Under the procedure set forth in
 
 State v. Benjamin, 573
 
 So.2d 528, 530 (La.App. 4 Cir.1990),
 
 [12]
 
 appointed appellant counsel has filed an
 
 Anders
 
 brief pursuant to
 
 Anders v. California,
 
 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) and
 
 State v. Jyles,
 
 96-2669, p. 3 (La.12/12/97), 704 So.2d 241, 242 (per curiam), asserting that she has thoroughly reviewed the trial court record and cannot find any non-frivolous issues to raise on appeal. Accordingly, appointed counsel asks this Court’s leave to withdraw as counsel of record. The State too asserts that it finds no non-frivolous issues for appeal, and moves this Court to allow appointed counsel to withdraw.
 

 In
 
 Anders,
 
 the United States Supreme Court stated that appointed appellate counsel may request permission to withdraw if he finds his case to be wholly frivolous after a conscientious examination of it.
 
 [13]
 
 The request must be accompanied by “‘brief referring to anything in the record that might arguably support the appeal’” so as to provide the reviewing court “with a basis for determining whether appointed counsel have fully performed their duty to support their clients’ appeals to the best of their ability” and to assist the reviewing court 116“in making the critical determination whether the appeal is indeed so frivolous that counsel should be permitted to withdraw.”
 
 McCoy v. Court of Appeals of Wisconsin, Dist. 1,
 
 486 U.S. 429, 439, 108 S.Ct. 1895, 1902, 100 L.Ed.2d 440 (1988).
 

 In
 
 State v. Jyles,
 
 96-2669 at 2, 704 So.2d at 241, the Louisiana Supreme Court stated that an
 
 Anders
 
 brief need not tediously catalog every meritless pretrial motion or objection made at trial with a detailed explanation of why the motions or objections lack merit. The supreme court explained that an
 
 Anders
 
 brief must demonstrate by full discussion and analysis that appellate counsel “has cast an advocate’s eye over the trial record and considered whether any ruling made by the trial court, subject to the contemporaneous objection rule, had a significant, adverse impact on shaping the evidence presented to the jury for its consideration.”
 
 State v. Jyles, supra.
 

 In evaluating an appeal for compliance with
 
 Anders,
 
 an appellate court must conduct an independent review of the record to determine whether the appeal is wholly frivolous.
 
 State v. Bradford,
 
 95-929, p. 4 (La.App. 5 Cir. 6/25/96), 676 So.2d 1108, 1110. If, after an independent review, the reviewing court determines there are no non-frivolous issues for appeal, it may grant counsel’s motion to withdraw and affirm the defendant’s conviction and sentence. However, if the court finds any legal point arguable on the merits, it may either deny the motion and order the court-appointed attorney to file a brief arguing the legal point(s) identified by the court, or grant the motion and appoint substitute appellate counsel.
 
 Id.
 

 Defendant’s appellate counsel asserts that after a detailed review of the record, she could find no non-frivolous issues to raise on appeal. Counsel observes that jury composition at trial was proper under
 
 *336
 
 LSA-C.Cr.P. art. 782, and the verdict was 117unanimous. Appellate counsel asserts there is no arguable basis to appeal the trial court’s denial of defendant’s pre-trial motions to suppress evidence and statement. She submits that the cocaine evidence was admissible under the “plain view” exception to the warrant requirement, and that defendant made an inculpa-tory statement only after officers advised him of his
 
 Miranda
 
 rights. Counsel maintains that the evidence at trial was sufficient to support defendant’s conviction. She points to the officers’ testimony that defendant admitted he had come to the hotel to sell cocaine. Counsel further notes that the State’s expert witness testified the amount of crack in defendant’s possession and the manner in which it was packaged were indicative of distribution rather than personal use.
 

 Appellate counsel avers that defendant’s original sentence was within statutory limits. Counsel notes that defendant’s habitual offender sentence is also within statutory limits, and that defendant is precluded by LSA-C.Cr.P. art. 881.2 from challenging his enhanced sentence, since he admitted to the allegations in the multiple bill.
 

 Appellate counsel has filed a motion to withdraw as attorney of record which states she complied with the requirements of
 
 Anders,
 
 and that she notified defendant of his right to file a
 
 pro se
 
 brief. Defendant filed a
 
 pro se
 
 brief on November 3, 2009.
 

 An independent review of the record supports appellate counsel’s assertion that there are no non-frivolous issues to be raised on appeal. As previously discussed herein, we fail to find that defendant has an arguable basis for appealing the trial court’s rulings denying his motion to suppress evidence. We also fail to find the trial court erred in denying the motion to suppress his statement.
 

 At the pre-trial suppression hearing, Detective Módica testified that when defendant came to the door of room 148 at the Shoney’s Inn, he was holding a bag l1Rof cocaine in his hand. The detective placed defendant under arrest for possession of cocaine and advised him of his rights. Defendant stated he understood his rights. Detective Módica then asked defendant why he had come to the room, and defendant replied that he was there to visit a friend. Defendant was unable to give the officer the friend’s name. When Detective Módica asked defendant if he was there to deliver drugs, defendant responded “ ‘yes.’ ”
 

 The State has the burden of affirmatively showing that a confession was made freely and voluntarily and not under the influence of fear, duress, intimidation, menace, threats, inducements, or promises before it may be admitted into evidence.
 
 State v. Dewey,
 
 408 So.2d 1255, 1258 (La.1982);
 
 State v. Batiste,
 
 06-824, p. 9 (La.App. 5 Cir. 3/13/07), 956 So.2d 626, 633,
 
 writ denied,
 
 07-0892 (La.1/25/08), 973 So.2d 751. If the statement was made during custodial interrogation, the State must also show that the defendant was advised of his constitutional rights.
 
 Miranda v. Arizona, supra; State v. Brown,
 
 03-0897, pp. 15-16 (La.4/12/05), 907 So.2d 1, 15,
 
 cert. denied,
 
 547 U.S. 1022, 126 S.Ct. 1569, 164 L.Ed.2d 305 (2006).
 

 We find the State sufficiently showed defendant was advised of his rights before he made the inculpatory statement. Additionally, Detective Módica testified at the motion hearing that he did not force or coerce defendant to respond to his questions, nor did he promise defendant anything in exchange for his statements.
 

 
 *337
 
 Further, as stated herein, we find that the officers’ seizure of the cocaine evidence was lawful under the “plain view” exception to the warrant requirement. In order for the plain view exception to the warrant requirement to apply, there must be prior justification for police intrusion into a protected area and it must be immediately apparent, without close inspection, that the item is contraband.
 
 Horton v. California,
 
 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990);
 
 State v. Gray,
 
 06-298, p. 7 (La.App. 5 Cir. 10/31/06), 945 So.2d 798, 802;
 
 writ denied,
 
 06-2958 (La.9/14/07), 963 So.2d 993. Detective Módica testified at the motion hearing that when defendant knocked on the door of the hotel room, he (Módica) stepped outside the room and saw defendant holding the cocaine in plain view. The officers were lawfully inside of room 148, since they had the cooperation of its occupant, Mr. Knowles. The officers were thus entitled to be outside the doorway of the room, where they had an unobstructed view of the cocaine in defendant’s hand.
 

 As appellate counsel notes, the evidence at trial was sufficient to support the jury’s verdict. The standard of review for the sufficiency of evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In this case, defendant was charged with possession with intent to distribute cocaine, in violation of LSA-R.S. 40:967 A. To prove that offense, the state was required to show defendant knowingly and intentionally possessed the drug, and that he did so with the specific intent to distribute it.
 
 State v. Clark,
 
 05-61, p. 6 (La.App. 5 Cir. 06/28/05), 909 So.2d 1007, 1011-12,
 
 writ denied,
 
 05-2119 (La.3/17/06), 925 So.2d 538.
 

 The testimony of Detectives Módica and Monnerjahn showed defendant arrived at the hotel only 15 minutes after Mr. Knowles telephoned him to request drugs. Both defendant and his car matched Mr. Knowles’s description. Defendant had crack cocaine in his hand when he arrived at the hotel room, and he admitted to the detectives that he had come there to deliver the crack to a friend.
 

 Lieutenant Jewell, an expert in the use, packaging, value, and distribution of cocaine and crack cocaine, testified the amount, value, and packaging of the crack seized in this case were indicative of distribution rather than personal use. He testified that a street-level user typically has only one or two rocks of crack with him 12nat any given time, since two rocks cost as much as $40.00. The four large slabs of crack defendant had could be broken up into 120 individual rocks, or dosage units.
 

 Lieutenant Jewell further testified that the crack was not packaged for individual use. The typical dosage unit of crack is .1 or .2 grams. But defendant in this case had four large slabs of crack, each weighing about three grams. Additionally, neither defendant nor his companion, Troy Gould, possessed the paraphernalia associated with smoking crack cocaine.
 

 In addition, defendant’s sentences present no appealable issues. Defendant’s original sentence was vacated at the time of his habitual offender proceedings. Defendant stipulated to his status as a second felony offender. The district court properly advised defendant of his right to a habitual offender hearing and his right to remain silent.
 
 [14]
 
 Defendant stated he understood his rights and wished to waive them. Defendant also completed
 
 *338
 
 a multiple bill waiver of rights form which contained an explanation of his rights, the penalty range to which he was exposed, and the sentence the court would impose. As a second felony offender, defendant was subject to a sentencing range of 15 to 60 years. LSA-R.S. 40:967 B(4)(b); LSA-R.S. 15:529.1 A(l)(a). Defendant’s 20-year sentence was thus legal. Additionally, defendant’s habitual offender sentence was part of a sentencing agreement. A defendant is precluded from raising a claim of excessive sentence on appeal when his sentence was imposed in conformity with a sentencing agreement set forth in the record at the time he admits to the allegations in a habitual offender bill.
 
 State v. Cross,
 
 06-866, p. 4 (La.App. 5 Cir. 4/11/07), 958 So.2d 28, 30.
 

 CONCLUSION
 

 |21For the reasons stated herein, we find no merit in defendant’s
 
 pro se
 
 assignments raised in his supplemental brief. Further, because appellate counsel’s brief adequately demonstrates by full discussion and analysis that she has reviewed the trial court proceedings and cannot identify any basis for a non-frivolous appeal and an independent review of the record supports counsel’s assertion, we hereby grant appellate counsel’s motion to withdraw as attorney of record. The conviction and sentence of defendant, Demond A. Haynes, are affirmed.
 

 CONVICTION AND SENTENCE AFFIRMED; MOTION TO WITHDRAW GRANTED.
 

 [1]
 

 .
 
 Anders v. California,
 
 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) and
 
 State v. Jyles,
 
 96-2669, p. 3 (La.12/12/97), 704 So.2d 241, 242 (per curiam),
 

 [2]
 

 . Detective Módica testified that he later attempted to locate Mr. Knowles to pay him for his assistance, but he was unable to find him.
 

 [3]
 

 .
 
 Miranda v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
 

 [4]
 

 . The State introduced the lab report completed by forensic chemist Thomas S. Angelica, Jr. The parties stipulated that if Mr. Angelica (spelled “Angelique” in the transcript) were called as a witness, he would be accepted as an expert in the identification and analysis of controlled dangerous substances. The parties further stipulated that Mr. Angelica would testify he had analyzed the evidence, it was positive for cocaine, and it weighed a total of 11.31 grams.
 

 [5]
 

 . In footnote 17 of defendant's pro se supplemental brief, he refers to "ancillary motions” he filed with the "instant application.” It is unclear to what motions he refers. This Court’s records show he directed a letter to this Court, filed April 3, 2009, in which he requested the appellate record. In an Order dated September 11, 2009, this Court ordered the Clerk of Court to send defendant a copy of the appellate record and the record was sent the same day.
 

 [6]
 

 . The officer's last name is spelled "Jewel” in the motion hearing transcript and "Jewell” in the trial transcript.
 

 [7]
 

 . The officer's name is spelled "Monerjahn” in the motion hearing transcript and "Mon-nerjahn" in the trial transcript.
 

 [8]
 

 . The officer’s name is spelled "Veens” in the motion hearing transcript and "Vignes" in the trial transcript.
 

 [9]
 

 . At trial, the confidential informant was identified as Rayburn Knowles, a hotel guest. He was not identified at the motion hearing.
 

 [10]
 

 . It is well-established that law enforcement officers have the right to stop and interrogate one reasonably suspected of criminal activity. LSA-C.Cr.P. art. 215.1;
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968);
 
 State v. Belton,
 
 441 So.2d 1195, 1198 (La.1983), ce
 
 rt. denied,
 
 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). In order to conduct such an investigatory stop, the police officer must have reasonable suspicion that the person is committing, has committed, or is about to commit an offense. Reasonable suspicion is something less than probable cause and is determined under the facts and circumstances of each case by whether the officer had sufficient facts within his knowledge to justify an infringement on the individual’s right to be free from governmental interference.
 
 State v. Honeycutt, supra
 
 at 7, 987 So.2d at 254.
 

 [11]
 

 . When there is sufficient evidence to consider some, but not all, of the allegations of ineffectiveness of counsel before it, this Court has declined to address any of the claims on grounds that they should be addressed in their entirety by the district court on post-conviction relief at an evidentiary hearing.
 
 State v. Allen,
 
 06-778 at 11-12, 955 So.2d at 751-52.
 

 [12]
 

 . The procedure set forth in
 
 Benjamin
 
 for compliance with
 
 Anders
 
 was sanctioned by the Louisiana Supreme Court in
 
 State v. Mouton,
 
 95-0981, pp. 1-2 (La.4/28/95), 653 So.2d 1176, 1177 (per curiam), and adopted by this Court in
 
 State v. Bradford,
 
 95-929, pp. 3-4 (La.App. 5 Cir. 6/25/96), 676 So.2d 1108, 1110.
 

 [13]
 

 . The United States Supreme Court most recently reaffirmed its position in
 
 Anders
 
 in
 
 Smith v. Robbins,
 
 528 U.S. 259, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000).
 

 [14]
 

 . LSA-R.S. 15:529.1 D(l)(a) requires that the defendant be advised of the specific alie-
 
 *338
 
 gations contained in the habitual offender bill of information and his right to a formal hearing at which the State must prove its case. Implicit in this requirement is the additional requirement that the defendant be advised of his constitutional right to remain silent.
 
 State v. Johnson,
 
 432 So.2d 815, 817 (La.1983);
 
 State v. Bell,
 
 03-217, p. 4 (La.App. 5 Cir. 5/28/03), 848 So.2d 87, 90.