JUDE G. GRAVOIS, Judge.
 

 IgThe defendant, Clarence Johnson, has appealed his conviction and sentence for second degree murder. For the reasons that follow, we affirm.
 

 PROCEDURAL AND FACTUAL BACKGROUND
 

 The defendant and his co-defendant, Kerry Curington, were charged with first degree murder of Donell “Red” Stipe on December 7, 2003. On June 25, 2007, the State amended the charge, as to both defendants, to second degree murder in violation of LSA-R.S. 14:30.1. The defendant pled not guilty at his arraignment and filed several pre-trial motions not relevant to this appeal.
 

 On October 25, 2007, the defendant filed a Motion to Sever Defendants, which was taken under advisement and ultimately granted by the trial court on April 22, 2009. On June 16, 2009, the defendant filed a Motion
 
 in Limine
 
 — [Exclusions of Photographs, which was denied by the trial court prior to the commencement of trial.
 

 On June 17, 2009, the defendant proceeded to trial before a twelve-person jury. The testimony at trial indicated that on the evening of December 7, 2003, Samuel (“Nanoo”) Carter, Donell (“Red”) Stipe, Kenneth Morton, Wayne White, Kerry (“Chopper”) Curington and a man known as “Lyehee”, were shooting dice at Lychee’s apartment located at 2620 Max Drive, Harvey, Louisiana. Leonard Veal, Harold Gilmore and a man named “Mervin” were watching the others gamble, along with a woman named Vanessa, who also lived in the apartment. At some point, White stopped playing, and after Curington arrived and started gambling, Morton pulled out of the game. Eventually, only Stipe, Carter and Curington remained in the game. After a couple of hours, Curington ran out of money and stopped playing. At the conclusion of the game, Stipe was the “big winner” and Cur-ington was the “big loser.”
 

 People started leaving the apartment after the game broke up, with Curington being the first to leave, followed by Stipe, Carter and Mervin. Morton, White and Veal left shortly thereafter. Morton testified that as they were walking to their cars, he observed Curington, armed with a gun, robbing Carter. Morton testified that he saw another man holding a gun on Stipe, but was unable to identify the other man because his back was turned. Morton returned to the apartment with White and Veal, and the police were called.
 

 Detective Donald Clogher of the Jefferson Parish Sheriffs Office, testified that when he arrived on the scene, Stipe was dead, lying on his back next to his vehicle. Stipe had sustained multiple gunshot wounds. Dr. Karen Ross, a forensic pathologist and Assistant Coroner for the Jefferson Parish Coroner’s Office, testified that the nine gunshot wounds Stipe suffered were inflicted by two [ 4different types of weapons, and that some of the wounds inflicted by each weapon were, on their own, fatal or potentially fatal.
 

 Detective Clogher testified that during his investigation he interviewed several witnesses, including Samuel Carter, Wayne White, Kenneth Morton, Harold Gilmore, Leonard Veal and Vanessa Nel-lon. Carter, who called the police from his cell phone shortly after the incident, was interviewed by detectives at the hospital. Detective Clogher learned that Carter, who left the scene after the perpetrators fled, had played dead after his hand and head were grazed by bullets. Carter indicated that although he didn’t know the two
 
 *452
 
 perpetrators by name, he was acquainted with both of them. Carter advised Detective Clogher that the nickname of one of the men was “Chopper.”
 

 After discovering Chopper’s full name, Kerry Curington, Detective Clogher was able to compile a photographic lineup and present it to Carter. Carter, and subsequently Morton and Gilmore, positively identified Kerry Curington as the perpetrator that had been armed with a handgun. An arrest warrant was secured and Kerry Curington was arrested.
 

 Carter also advised the police that he could identify the second perpetrator. Detective Clogher testified that Curington was arrested in Orleans Parish on unrelated charges. When Detective Clogher went to Orleans Parish to execute the arrest warrant on Curington, he noted that a man who fit the description of the second perpetrator, i.e. taller and lighter skinned than Currington, was arrested in Orleans Parish on unrelated charges with Curing-ton. This man was identified as Clarence Johnson, the defendant herein. In an attempt to discover if Johnson was the second perpetrator, Detective Clogher compiled a photographic lineup that included a picture of Johnson and presented this lineup to Carter. Carter identified Clarence Johnson, the defendant, as the man he had seen with Curington on at least |fitwo prior occasions, as the perpetrator who had been armed with a rifle, and as the person that had fired the rifle at him. An arrest warrant was secured for the defendant, who was arrested and charged with the murder of Stipe.
 

 At the conclusion of the trial, the jury found the defendant guilty of second degree murder. The trial court denied the defendant’s Motion for New Trial. On June 24, 2009, the defendant was sentenced to life imprisonment without the possibility of probation, parole, or suspension of sentence. The 'defendant filed a written motion for appeal, which was granted on June 24, 2009.
 

 ASSIGNMENT OF ERROR
 

 On appeal, in his only assignment of error, the defendant argues that the trial court erred in overruling the defense’s objection to photographs which were more prejudicial than probative. The defendant argues that it was unnecessary to use gruesome photographs to establish that the victim died of multiple gunshot wounds, and that the probative value of the photographs was substantially outweighed by the danger of unfair prejudice. Specifically, the defendant asserts that the close up photographs of the victim and the photograph of the victim with a rod protruding from his head to establish bullet trajectory were so gruesome that they overwhelmed the jurors’ sense of reason, leading them to convict the defendant without sufficient other evidence. Finally, the defendant contends that it was unnecessary to use gruesome photographs to establish trajectory because the coroner’s diagrams and testimony adequately portrayed bullet trajectory.
 

 The State contends that the record supports the trial court’s ruling admitting the photographs at issue. Specifically, the State asserts that the photographs were properly utilized by Dr. Karen Ross in conjunction with her testimony to establish entry and exit wounds and to demonstrate bullet trajectory. Moreover, because the | ^photographs constituted evidence of specific intent, cause of death, location and placement of wounds, and the identity of the victim, the State contends that the evidence was highly relevant and admissible. Finally, the State argues -that the photographs were not so gruesome as to overwhelm the jurors’ sense of reason. As such, the State concludes that the proba
 
 *453
 
 tive value of the photographs outweighed any prejudicial effect on the defendant.
 

 Evidence is relevant if it has “any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” La. C.E. art. 401. All relevant evidence is admissible, except as otherwise provided by law, and irrelevant evidence is not admissible. La. C.E. art. 402. However, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. La. C.E. art. 403.
 

 Generally, photographs are admissible if they illustrate any fact, shed light upon any fact or issue in the case, or are relevant to describe the person, place, or thing depicted, subject to the test that their probative value outweighs any prejudicial effect.
 
 State v. Battaglia,
 
 03-692, p. 10 (La.App. 5 Cir. 11/25/03), 861 So.2d 704, 710,
 
 writ denied,
 
 04-1701 (La.4/29/05), 901 So.2d 1058 (citation omitted). The State is entitled to the moral force of its evidence, and post-mortem photographs of murder victims are admissible to prove
 
 corpus de-licti,
 
 to provide positive identification of victim, and to corroborate other evidence establishing cause of death, the manner in which the death occurred, and the location, severity, number and placement of the wounds.
 
 State v. Condley,
 
 04-1349, p. 18 (La.App. 5 Cir. 5/31/05), 904 So.2d 881, 892-893,
 
 writ denied,
 
 05-1760 (La.2/10/06), 924 So.2d 163 (citations omitted). The cumulative nature of photographic evidence 17does not render it inadmissible if it corroborates the testimony of witnesses on essential matters.
 
 Battaglia,
 
 03-692 at 10, 861 So.2d at 711.
 

 The mere fact that a photograph is gruesome does not, in and of itself, render it inadmissible.
 
 State v. Jones,
 
 99-798, p. 7 (La.App. 5 Cir. 11/10/99), 748 So.2d 1176, 1179,
 
 writ denied,
 
 00-0306 (La.12/8/00), 775 So.2d 1076. Photographic evidence is admissible unless it is “so gruesome as to overwhelm the jurors’ reason and lead them to convict the defendant without sufficient evidence, i.e., when the prejudicial effect of the photographs substantially outweighs their probative value.”
 
 Condley,
 
 04-1349 at 18-19, 904 So.2d at 893 (citing
 
 State v. Perry,
 
 502 So.2d 543, 558-559 (La.1986),
 
 cert. denied,
 
 484 U.S. 872, 108 S.Ct. 205, 98 L.Ed.2d 156 (1987) (citations omitted)). The admission of “gruesome photographs is not reversible error unless it is clear that their probative value is substantially outweighed by their prejudicial effect.”
 
 Id.
 
 at 19, 904 So.2d at 893 (citing
 
 State v. Broaden,
 
 99-2124 (La.2/21/01), 780 So.2d 349, 364,
 
 cert. denied,
 
 534 U.S. 884, 122 S.Ct. 192, 151 L.Ed.2d 135 (2001) (citation omitted)). Generally, an appellate court places great weight upon a trial court’s ruling on the relevancy of evidence and such a determination will not be reversed absent a clear abuse of discretion.
 
 State v. Durand,
 
 07-4, p. 13 (La.App. 5 Cir. 6/26/07), 963 So.2d 1028, 1036-37,
 
 writ denied,
 
 07-1545 (LA.1/25/08), 973 So.2d 753.
 

 In
 
 State v. Logan,
 
 07-739, p. 27-28 (La.App. 5 Cir. 5/27/08), 986 So.2d 772, 789,
 
 writ denied,
 
 08-1525 (La.3/13/09), 5 So.3d 117,
 
 cert. denied,
 
 — U.S.-, 130 S.Ct. 142, 175 L.Ed.2d 93, 78 USLW 3174 (2009), the defendant argued that the probative value of autopsy photographs was limited because the body had been moved, altered by medical procedures, and rolled in blood before the photographs were taken. Noting that the photographs were not repetitive or cumulative, this Court found that the autopsy photographs were relevant to show the manner of death and | sthe location, placement, and number of bullet
 
 *454
 
 wounds on the victim’s body, and to illustrate each bullet’s trajectory as an entrance or exit wound.
 
 Id.
 
 at 32, 986 So.2d at 791. Holding that the defendant failed to show that the photographs were clearly more prejudicial than probative so as to justify interference in the trial court’s exercise of its broad discretion to admit the evidence, this Court determined that the photographic evidence was properly admitted.
 
 Id.
 

 In
 
 State v. Bridgewater,
 
 00-1529, p. 34 (La.1/15/02), 823 So.2d 877, 903-904, fn. 34,
 
 cert. denied,
 
 537 U.S. 1227, 123 S.Ct. 1266, 154 L.Ed.2d 1089 (2003) the Louisiana Supreme Court recognized that autopsy photographs introduced during the State’s questioning of the forensic pathologist who performed the autopsy, including some depicting a metal rod inserted into the victims’ bullet wounds, were properly admitted at trial. The court noted that the photographs corroborated the forensic pathologist’s testimony regarding the trajectory of the bullets that killed the victims and that, contrary to the defendant’s contention, the probative value of these photographs was not outweighed by their prejudicial effect.
 
 Id.
 

 In the present case, the defendant first objected to the photographs at issue by filing a pre-trial motion
 
 in limine
 
 requesting that the trial court exclude any autopsy photographs depicting fresh blood, full face, full body, removed organs, internal organs, surgical gloved hands or tools of the trade, and any photographs that depict the face close up or the full naked body of the victim. Conversely, the State argued that the photographs, which depicted the wounds inflicted on the victim and the angles from which the wounds were inflicted, were probative and not unnecessarily gory, and that the State was entitled to the moral force of its evidence. The trial judge reviewed the photographs and, noting that they were probative and not repetitive or unnecessarily gory, denied the defendant’s motion.
 

 IsThe defendant again objected to the admission of the autopsy photographs during trial. The photographs at issue were introduced though the testimony of Dr. Karen Ross, who performed the autopsy on the victim. Noting the defendant’s objection, the trial judge admitted the photographs, which Dr. Ross utilized to establish cause of death, to show the type and location of entrance and exit wounds for the nine gunshot wounds inflicted, to establish bullet trajectory, and to support her opinion that the wounds Stipe suffered were inflicted by two different types of weapons. The photographs also provided positive identification of the victim. Finally, the 16 photographs introduced by the State were not repetitive, and although the defendant argues that the coroner’s diagrams and testimony adequately portrayed the trajectory of the bullet, the photographs were offered to corroborate the testimony of Dr. Ross on essential matters, such as cause of death and location and placement of wounds.
 
 See Battaglia,
 
 861 So.2d at 711.
 

 Although autopsy photographs are gruesome by their very nature, we find that in this instance, the probative value of the photographs to which the defendant objected outweighed any prejudicial effects on the defendant. Thus, the trial court did not err in admitting the photographs into evidence. As such, this assignment of error is without merit.
 

 ERRORS PATENT DISCUSSION
 

 The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975);
 
 State v. Weiland,
 
 556 So.2d 175 (La.App. 5 Cir.1990). This review did not reveal any errors patent that require corrective action.
 

 
 *455
 
 1,0
 
 CONCLUSION
 

 For the foregoing reasons, the defendant’s conviction and sentence are hereby affirmed.
 

 AFFIRMED.